JAMES K. HULETT, Plaintiff-Appellant, *v.* CENTRAL ILLINOIS LIGHT COMPANY, Defendant.—(CALVARY BAPTIST CHURCH OF TREMONT *et al.*, Defendants-Appellees.)

Third District    No. 80-650

Opinion filed August 17, 1981.

Robert G. Day, Jr., and Susan Hickman Butler, both of Moehle, Reardon, Smith & Day, Ltd., of Peoria, for appellant.

Clifford E. Schneider, of Davis & Morgan, and Charles D. Knell and Karen J. Steele, both of McConnell, Kennedy, Quinn & Johnston, both of Peoria, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff James K. Hulett filed a three-count complaint against defendants Central Illinois Light Company, Calvary Baptist Church of Tremont

(hereinafter Calvary Baptist), and Louis Woerner for damages allegedly occasioned by defendants' negligence in the maintenance of certain electrical service wires. Calvary Baptist and Woerner, the only defendants involved in this appeal, moved for summary judgment. After a hearing on the merits, the circuit court of Tazewell County held that plaintiff was guilty of contributory negligence and granted both motions.

Calvary Baptist had rented a house in Tremont from Woerner for use as a parsonage. The house needed to be painted and a member of the church's board of trustees asked plaintiff to help with the work. Plaintiff had often visited the house and had caulked and installed storm windows on it, using a ladder in this work.

On August 5, 1977, plaintiff came to the parsonage, bringing a metal pump-type sprayer which was approximtely two feet tall. Using the sprayer, a brush, and a 30-foot aluminum extension ladder, he proceeded to treat the exterior of the house with a liquid used to remove fungus. After applying the solution to the entire north side of the house, he proceeded to its east side, commencing at the northeast corner. Once finished, he moved the ladder to the center of the east side.

Two sets of electrical wires ran from a utility pole to the upper center of this side of the parsonage. Plaintiff was aware of these wires and positioned the ladder between them so as to avoid any contact. He thereafter recommenced treating the house, being careful not to contact the wires with his person or the ladder. At some point during this phase of his work, plaintiff received an electrical shock and fell to the ground. Immediately after the fall, the church's pastor looked up from the ground and commented on the poor condition of the wires. Sometime after his accident, plaintiff returned to the scene and observed that the insulation was off of them. He does not know how he received the shock but does know he did not touch the wires.

■▌ Before reaching the primary issue of whether plaintiff was contributorily negligent as a matter of law, we must first consider whether this is a germane question in light of the supreme court's abolition of the doctrine of contributory negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. Plaintiff, by motion, reminds us that if a judgment has been entered and a cause is pending on appeal, the reviewing court must dispose of the case under the law in force when its decision is rendered. (*E.g., People ex rel. Bauer v. Elmhurst-Villa Park-Lombard Water Com.* (1960), 20 Ill. 2d 139, 169 N.E.2d 350.) As *Alvis* promulgates the law to be today applied, we note the court's mandate:

> "We hold that this opinion shall be applied to the parties before us on appeal and to all cases in which trial commences on or after June 8, 1981, the date on which the mandate in this case shall issue. This opinion shall not be applicable to any case in which trial commenced before that date—except that if any judgment be re-

versed on appeal for other reasons, this opinion shall be applicable to any retrial." *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28, 421 N.E.2d 886, 898.

Plaintiff argues that we should apply the doctrine of comparative negligence to this cause as no trial has yet commenced. While this is undeniably the case as summary judgment was entered on November 25, 1980, there has been a final decision on the merits. As a motion for summary judgment is the procedural equivalent of a trial (*People ex rel. Highsmith v. County of Jefferson* (1967), 87 Ill. App. 2d 145, 230 N.E.2d 480, *appeal denied* (1968), 37 Ill. 2d 627), we shall not apply the doctrine of comparative negligence on appeal.

Having determined that the doctrine of contributory negligence applies to this cause on appeal, we return to the primary issue of whether plaintiff was contributorily negligent as a matter of law. As a discussion of each of the many decisions which the parties have cited would result in an opinion of undue length, we shall focus our analysis on the decisions on which primary reliance is placed.

Of the many decisions cited by plaintiff, primary reliance is placed on *Stilfield v. Iowa-Illinois Gas & Electric Co.* (1960), 25 Ill. App. 2d 478, 167 N.E.2d 295, *appeal denied* (1960), 19 Ill. 2d 626. *Stilfield* involved a plaintiff who had been directed to move several large pieces of equipment for his employer. The corner area to which the equipment was to be moved was adjacent to certain electrical transmission lines. The equipment was brought to the site on a truck which was "spotted," as was the crane used in the operation. The crane operator swung the crane around to check the clearance with the west wire and discovered it to be approximately eight feet. The operator then picked up a large piece of equipment, and the plaintiff assisted by guiding it by means of an attached chain. As the equipment was being lowered to the ground, and while there was at least three feet of clearance between the crane and the wire, electricity arced from the wire to the crane's cable and down through the chain which the plaintiff was holding. While unaware that the wire was uninsulated or of the voltage it conducted, the plaintiff was clearly aware of its presence. The trial court entered a judgment *n.o.v.* in the defendant's favor based on its finding of contributory negligence as a matter of law. The appellate court reversed and reinstated the verdict it found the jury properly reached. Plaintiff herein argues that the facts of the case at bar are so similar, a jury trial is mandated.

Of the many decisions cited by defendants, primary reliance is placed on *Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 356 N.E.2d 148, *appeal allowed* (1977), 65 Ill. 2d 580.[1] *Stambaugh*

---

[1] Although leave to appeal was allowed, the case was subsequently settled and the appeal was dismissed. See *Sharp v. Central Illinois Light Co.* (1978), 55 Ill. App. 3d 1033, 1035, 371 N.E.2d 684, 685.

involved a plaintiff who had gone to a mobile home park to assist a lessee of the park in relocating an antenna. The plaintiff had been at the lessee's mobile home eight or nine times and had helped him build his front porch but had never noticed the overhead power line. With his back to the wire, the plaintiff climbed part way up a tower when the antenna, which the lessee had handed to him, came in close proximity to the power line. The current apparently arced from the wire to the antenna and the plaintiff fell to the ground. While the wire and a transformer were clearly visible, the plaintiff never noticed them. The trial court rendered summary judgment in the defendant's favor and the appellate court affirmed, finding contributory negligence as a matter of law. Defendants herein argue that the facts of *Stambaugh*, not *Stilfield*, are most similar to those of the case at bar. Plaintiffs respond that *Stambaugh* is inapposite to a situation where a plaintiff is actually aware of the existence of power lines.

■■ While the existence of contributory negligence is normally a question of fact for the jury (*Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 348 N.E.2d 457), the facts and circumstances of each case control as to whether it is such a question or a matter of law (*Sharp v. Central Illinois Light Co.* (1978), 55 Ill. App. 3d 1033, 371 N.E.2d 684). Before discussing the governing precedent, we therefore return to the facts and circumstances at bar.

As indicated earlier, plaintiff himself placed the aluminum ladder between the two electrical wires as he alone made the decisions regarding his task. That he was aware of the wires is uncontroverted. In his deposition testimony, he indicated that he had worked as a millwright and a farmer. In the former position he had erected and maintained machinery, sometimes ladder-climbing to heights of 40 or 45 feet. In the latter position, he had become familiar with electric fences and realized one could be shocked by spraying water on them. In spite of this background, plaintiff did not notice a problem with the wires' insulation which was visible from the ground, nor make any effort to inspect the wires. Even upon his assent up the ladder, he did not inspect the wires nor notice their observable condition. As plaintiff explained, he "just went up to the ladder, took the sprayer and began spraying." The following deposition excerpt is significant:

"Q. When you first went up to that ladder with your pump-up sprayer, could you tell, yourself, as to whether or not there was insulation on those wires, * * *?

A. You want to know, could I or did I?

Q. Did you?

A. No, I didn't realize, I didn't inspect them, I knew they were wires, yes, but I didn't inspect them. If you mean if I could have, yes, I could have.

Q. You could have?

A. I'm answering the question, I could have inspected them.

Q. Could you have inspected them, could you have looked at them?

A. I could have.

Q. But you did not?

A. No, I wasn't inspecting wires, I knew they were there and I was doing the house."

As plaintiff explained:

"A. It wasn't in my mind, I was scared of them and I was trying to stay away from them. I knew I had to get the house done so I thought I would get in and do it, get away from them soon as I could, I have always been scared of wires."

Plaintiff's failure to observe or inspect is also noteworthy in light of what he had noticed earlier in his spraying:

"Q. Was the liquid itself, when you would spray the house, would there be like a film or spray that when it hit the house, splash off of the house itself?

A. Yes.

MR. WOMBACHER: You mean bounce off?

MR. KNELL: Bounce off the house?

A. Like a mist?

Q. Yes.

A. Yes.

Q. Did that happen when you were working on the north side of the house when you first started?

A. Yes.

Q. Did that happen on the northeast section of the house?

A. Yes."

Returning to our discussion of the governing precedent, we note two factors present in *Stilfield* which are not present in the case at bar. First, the cited decision involved "conflicting testimony in the record as to whether or not, after the crane, boom, and cable were 8 feet from the wire, the plaintiff ordered the crane moved in closer to the electrical wire." (*Stilfield v. Iowa-Illinois Gas & Electric Co.* (1960), 25 Ill. App. 2d 478, 486-87, 167 N.E.2d 295, 299.) In the instant case, the facts are uncontroverted. Second, as was explained by the court in *Witzig v. Illinois Power Co.* (1969), 114 Ill. App. 2d 139, 143, 251 N.E.2d 902, 904:

"[A] careful reading of [*Stilfield*] indicates, that a controlling factor in the court's opinion was also that the control of the boom was not alone in the plaintiff, but in the crane operator and the evidence in the record would justify a jury in concluding that the plaintiff made every reasonable effort to avoid having the chain or

cable he was holding come in close proximity to the power line. Thus, the plaintiff in that case, notwithstanding his lack of knowledge or lack of specified knowledge, was exercising every precaution within his control to avoid the result. * * *"

In the instant case, plaintiff was in complete control of his actions.

■■ While factual differences are clearly present, we find the situation at bar more similar to that of *Stambaugh*. It is true that the plaintiff in that case failed to notice the power lines while plaintiff herein was clearly aware of the wires. What plaintiff herein failed to notice was the observable poor condition of the wires' insulation. As noted by the court in *Withey v. Illinois Power Co.* (1961), 32 Ill. App. 2d 163, 171-72, 177 N.E.2d 254, 259, *appeal denied* (1962), 22 Ill. 2d 625:

"A failure to see what is clearly visible is not such conduct as is compatible with due caution for one's own safety. [Citation.] Where danger is obvious to a person of ordinary intelligence, the law will charge him with knowledge of it and the law does not countenance the anomaly of professing to look and not seeing that which is clearly visible. [Citations.]

It has long been recognized that the danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience. Its use as a motive power has become so general and wide spread as to acquaint all competent persons with the fact that any line carrying electricity is dangerous. [Citation.] * * * A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the exercise of reasonable and ordinary care. [Citations.]"

While no absolute rule can be promulgated in cases of this nature (see *Sharp v. Central Illinois Light Co.* (1978), 55 Ill. App. 3d 1033, 1036, 371 N.E.2d 684, 686), we find plaintiff's spraying in the vicinity of observable exposed electrical wires, under the circumstances herein, to constitute contributory negligence as a matter of law. We therefore do not reach the additional issues concerning defendants' negligence.

Summary judgment is appropriately entered if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that a movant is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) This being the case, the trial court properly entered judgment in defendants' favor.

Accordingly, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.