471 N.W.2d 756 (1991)
238 Neb. 672
Walter FETTY, Appellee,
v.
SEWARD COUNTY RURAL PUBLIC POWER DISTRICT, Appellant.
No. 89-362.
Supreme Court of Nebraska.
July 19, 1991.
*757 Steven E. Guenzel, of Barlow, Johnson, DeMars & Flodman, Lincoln, for appellant.
John M. Guthery, of Perry, Guthery, Haase & Gessford, P.C., and Thomas Dawson, Lincoln, for appellee.
HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
CAPORALE, Justice.
In this political subdivisions tort claims action, the defendant-appellant, Seward County Rural Public Power District, challenges the judgment obtained against it and in favor of the plaintiff-appellee, Walter Fetty. The power district asserts the trial court erred in, among other things, failing to find that Fetty was contributorily negligent in a degree sufficient to bar his recovery as a matter of law. The record sustaining that assignment of error, we reverse and remand with the direction that the cause be dismissed, without consideration of the power district's other claimed errors.
In 1979, Fetty and his wife purchased a going gasoline and sundries retail business in Seward County, which they thereafter expanded by adding camping facilities. As part of the addition, a second electrical service was provided by the power district to supplement the service it originally provided in 1966. The electrically energized wires for both services originated at a transformer pole, spanned to a support pole, and thence spanned to the west side of the metal building from which the business was conducted, at which point the services were connected to wires exiting conduits leading to two separate meters affixed to the building.
Each service consisted of two insulated energized wires, that is, wires carrying 120 volts of electrical current, wrapped around one uninsulated, nonenergized ground wire. Among other things, the ground wire provided support for the energized wires. The two services were affixed to the building adjacent to one another at a point more than 11 feet above ground and between the conduits. From this building connection point, the energized wires of each service, no longer wrapped around the ground wire, looped away from each other and were spliced to the conduit wires, which were insulated. Each of the splices connecting the energized wires to the conduit wires was encased in an aluminum connector, which appears to have been not more than 6 inches in length, thereby energizing the conduit wires. The encased wire splices on the 1979 service were insulated with tape which had deteriorated. The encased splices on the 1966 service were not insulated at all. There is testimony that because of oxidation, an encasing connector "could very well look like an insulator to an average person that doesn't know the difference."
During the afternoon of May 8, 1986, while on an aluminum ladder painting between the conduits, which apparently were several feet apart, Fetty, then 61 years old, suffered an electrical shock when his left *758 hand came into contact with one of the splices on the 1966 service. The charge knocked Fetty from his position near the top of the ladder, which was stationed against the left conduit, to the ground, as the result of which he sustained injury.
Fetty is a college graduate, knew that electrical powerlines are dangerous and ought not be touched, and exhibited familiarity with the process of arc welding, which uses electricity to heat and melt metals. He also knew that aluminum conducts electricity. He, nonetheless, being aware of the energized wires and never having noticed the connectors, assumed that it would be safe to work around the wires.
The record reveals that one coming into contact with an electrically energized wire would not suffer a shock unless he or she also came into contact with a grounding source. It is for that reason that employees of the power district use fiberglass ladders, which will normally not carry a current.
For purposes of our analysis, we assume, without deciding, that the power district was negligent in failing to insulate the connectors when they were installed and in thereafter failing to properly inspect and maintain them. The question is whether the power district is correct in claiming that in comparing its negligence to that of Fetty, Fetty was contributorily negligent in a degree sufficient to bar his recovery as a matter of law.
Neb.Rev.Stat. § 25-21,185 (Reissue 1989) provides:
In all actions brought to recover damages for injuries to a person or to his property caused by the negligence ... of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence ... of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence ... and contributory negligence shall be for the jury.
We have said:
Contributory negligence is conduct for which a plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury. [Citations omitted.]
An actor is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause. [Citations omitted.]
Horst v. Johnson, 237 Neb. 155, 160-61, 465 N.W.2d 461, 465 (1991). Accord Workman v. Stehlik, 238 Neb. 666, 471 N.W.2d 760 (1991).
While the determination of whether conduct constitutes contributory negligence is generally a question of fact, Horst v. Johnson, supra, we have ruled on a number of occasions that a plaintiff's conduct in coming into contact with electrical powerlines constituted contributory negligence in a degree sufficient to bar recovery as a matter of law. See, Engleman v. Nebraska Public Power Dist., 228 Neb. 788, 424 N.W.2d 596 (1988); Tiede v. Loup Power Dist., 226 Neb. 295, 411 N.W.2d 312 (1987); Suarez v. Omaha P.P. Dist., 218 Neb. 4, 352 N.W.2d 157 (1984); Rodgers v. Chimney Rock P.P. Dist., 216 Neb. 666, 345 N.W.2d 12 (1984); Lorence v. Omaha P.P. Dist., 191 Neb. 68, 214 N.W.2d 238 (1974); Omaha Nat. Bank v. Omaha P.P. Dist., 186 Neb. 6, 180 N.W.2d 229 (1970); Disney v. Butler County Rural P.P. Dist., 183 Neb. 420, 160 N.W.2d 757 (1968).
While the foregoing cases involved overhead electrical wires carrying high-voltage electrical current, the principle remains that one is required to respect the properties of electrical energy. Fetty's cavalier assumption that it was safe to work *759 around energized electrical wires while standing on an aluminum ladder leaning against a conduit attached to a metal building was ill founded and should have been recognized by him to be such.
This case is not unlike Hulett v. Central Illinois Light Co., 99 Ill.App.3d 211, 54 Ill.Dec. 463, 424 N.E.2d 1366 (1981), which held that a plaintiff, injured while spraying a liquid in the vicinity of observable exposed electrical wires, was contributorily negligent as a matter of law. That court, in affirming the trial court's grant of the defendant's motion for summary judgment, relied heavily upon the plaintiff's acknowledgment that he could have inspected the wires and that he was aware that spraying liquid on electric lines could produce a shock. While, here, there is testimony that perhaps the uninsulated condition of the connectors might not have been readily apparent to the average person, the fact is that Petty had firsthand experience with the powers of electrical energy and knew that aluminum conducts electricity.
Thus, the trial court's finding that the power district failed to prove that Fetty was contributorily negligent in a degree sufficient to bar his recovery as a matter of law is clearly erroneous.
Accordingly, the trial court's judgment must be, and hereby is, reversed and the cause remanded with the direction that it be dismissed.
REVERSED AND REMANDED WITH DIRECTION TO DISMISS.
WHITE, Justice, dissenting.
In this most recent decision, the majority continues to usurp the role of the trial judge as the finder of fact. See, also, Koncaba v. Scotts Bluff County, 237 Neb. 37, 464 N.W.2d 764 (1991). Once again the court has ignored our standard of review in a bench trial of a law action and substituted its own judgment for that of the trial court. This court does not reweigh evidence but considers the judgment in the light most favorable to the successful party and resolves any evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. Ohnstad v. Omaha Public Sch. Dist. No. 1, 232 Neb. 788, 442 N.W.2d 859 (1989). The majority has again failed to give such deference to the decision of the trial judge in this case.
I cannot agree with the majority's contention that Walter Fetty's negligence was as a matter of law more than slight so as to totally bar compensation for his injuries. In reversing the decision of the trial court, the majority relies upon the facts that Fetty was a college graduate, had some experience with the process of arc welding, used an aluminum ladder to paint between the powerlines near his business, and knew that aluminum conducted electricity. According to the majority, these facts were sufficient to conclude, as a matter of law, that Fetty was more than slightly contributorily negligent, despite testimony in the record that the insulation protecting a wire splice had deteriorated and that because of oxidation, the connectors encasing the spliced wires "could very well look like an insulator to an average person that doesn't know the difference."
Apparently, the majority presumes that Fetty should have known that the splices on the wires to the conduits were, or could have been, defectively insulated, based on the fact that he was an educated man familiar with the properties of electricity. While I concede that Fetty's action in using an aluminum ladder near the electrical lines was evidence of his contributory negligence, I cannot agree that his actions in this case were so grossly out of step with the "reasonable man" that he was negligent as a matter of law. The trial court agreed and rendered judgment in favor of Fetty.