FRANK DISNEY, APPELLANT, v. BUTLER COUNTY RURAL PUBLIC POWER DISTRICT, APPELLEE.

160 N. W. 2d 757

Filed August 23, 1968. No. 36761.

Snell & Winkle, Barney, Carter & Buchholz, Herbert M. Brugh, and John C. Whitehead, for appellant.

Mills, Mills & Mills and John E. Dougherty, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The defendant's two-wire electric power transmission line (neutral wire 21 feet, 6 inches and hot wire 25 feet, 6 inches in height) crossed plaintiff's farmyard and driveway. Plaintiff sues for electric-shock-caused personal injuries occurring when a tractor pulling 70-foot irrigation sprinkler arms either contacted or arced with the hot line, throwing plaintiff off the tractor he was pulling the trailer sprinkler equipment with. The district court dismissed the cause primarily on the ground that the plaintiff was guilty of contributory negligence as a matter of law. We affirm the judgment of the district court.

The accident occurred around 6 a.m., July 21, 1960. Plaintiff was moving his irrigation equipment through his farmyard to irrigate another part of his farm. He had acquired the farm in 1955 and the irrigation sprinkler equipment in October 1959. The sprinkler system consisted of two wings extending approximately 72 feet from a trailer upon which the wings were mounted. He had acquired the farm in 1955 and at that time and at all times knew it had a 7,200 volt power line traversing the yard and driveway. The line had been constructed in 1946. Pulling into the yard with the irrigation trailer system arms elevated and behind him, he stopped the tractor without first looking to see how close the arms were to the line. He jumped off the tractor, apparently touched some part thereof, was shocked unconscious, was discovered by his wife who had been in the kitchen, and was taken to the hospital in Osceola, Nebraska. The plaintiff had farmed most of his life. He was familiar with the lines across his yard; knew there were two lines, one above and one below; knew the construction of and the height of the lines; observed that the lines had remained in the "same condition"; knew the length of the irrigation wings; and knew they were of the boom type, that they were set on the trailer, and were "loose." He testified that ordinarily he was careful when he went under high tension lines. He had moved the equipment many times

before. He knew the lines carried electricity, that it was dangerous to get anything in contact with or close to the lines, and that if he got close to the lines, "he was going to get in trouble." When he neared the high tension wires he was looking at the sprinkler. As to the exact circumstances of the accident he testified: "Q * * * But you knew all the time that those high tension lines were there, but you were busy being occupied by looking at something else, isn't that right? A Yes, the sprinklers. Q * * * But you didn't at anytime look up and see whether your sprinkler was going to be engaged with those high tension wires or whether it would be clear underneath them. That's right, isn't it? A Well, I pulled just on the end and stopped. Q But you knew at the same time that you were right underneath those high tension wires, didn't you, Frank? A Yes. Q And you weren't looking for those but you were looking down to watch that sprinkler? A Yes." Other testimony establishes without dispute that there was a slight breeze blowing; that the height of the lower neutral line was 21 feet, 6 inches, with the hot line 4 feet above that; that after the accident the boom which was unlocked and loose was 24 to 30 inches from the hot line; and that the line came in contact with the sprinkler arm 4 or 5 feet from the end of the boom, burned apart, and came down.

Other evidence generally establishes the prevalence of high tension lines along and crossing farms generally in Butler County, constant warnings of the hazards involved by the defendant to customers and owners, and that the lines were well above minimum heights established by the industry and regulations. There is considerable evidence as to "sag," but the actual height of the wires at the scene was conclusively established by the evidence and there is no evidence of an abnormal sag which would widen a wind or breeze-blown swing of the wires beyond normal expectations.

The applicable rule of law is set out in the recent

case of Fritchley v. Love-Courson Drilling Co., Inc., 177 Neb. 455, 129 N. W. 2d 515. In a substantially analogous situation this court said: "The plaintiff first saw the defendant's water tank in 1959. At that time the top rung of the ladder was broken loose from the pipe and the plaintiff considered the ladder to be dangerous. The plaintiff had climbed this ladder between three and five times before the accident happened. On the day that the accident happened, the ladder, including the top rung, was in the same condition that it was in when the plaintiff first saw it. The condition of the ladder was visible and could be seen from the ground. * * * The plaintiff did not inspect the ladder before climbing it and he did not have the broken rung in mind when he started to climb. The plaintiff was wearing overshoes which were muddy and he did not remove them before attempting to climb the ladder. * * * One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. One who knows of a dangerous condition, appreciates its dangerous nature, and deliberately exposes himself to the danger assumes the risk of injury from it. Wertz v. Lincoln Liberty Life Ins. Co., 152 Neb. 451, 41 N. W. 2d 740, 17 A. L. R. 2d 629; Lownes v. Furman, 161 Neb. 57, 71 N. W. 2d 661; Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59; Gamble v. Gamble, 171 Neb. 826, 108 N. W. 2d 92; Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041."

The general rule is accurately set out in 29 C. J. S., Electricity, § 53, p. 1115: "One who has notice of a dangerous condition of a wire or other electrical appliance and voluntarily or recklessly brings himself into contact with it, as by touching it with conductors of electricity, is guilty of negligence and cannot hold the company for the resulting injuries, and this is true of an adult although he is wholly unskilled in the handling of electricity. * * * To constitute want of due care on his

part it is not required that he should have anticipated the exact risk which occurred or that the peril was a deadly one; it is sufficient that he placed himself in a position of a known danger where there was no need for him to be or that he knew or should have known that substantial injury was likely to result from his acts."

The lack of care on the part of the plaintiff, according to his own testimony, is almost self-evident. According to his own testimony he was not paying any attention when he came with the sprinkler to the place where the lines were, because he was looking at the sprinkler. He never looked up at the lines to see precisely where they were, or gauged whether his equipment would likely come in contact with them, or, despite his knowledge, make any evaluation of danger or trouble in passing the lines. There was no reason why he could not lower the boom to irrigating position before going under the wires. He knew the wings were elevated and that their height was much above any possibility of marginal clearance. And after descending from the tractor there is no evidence that he made any observation of the wires, what position he was in, or the nature and character of the equipment with reference to coming in contact with the lines.

Unless we were to hold the defendant liable on the doctrine of absolute liability for injuries arising from the transmission of electricity, the facts in this case are conclusive of contributory negligence on the part of the plaintiff. Clearly the plaintiff was capable of understanding and discretion, at the time had knowledge of and was conscious of the danger involved, knew of the dangerous condition, and failed to exercise ordinary care to avoid dangers which were open and obvious.

The judgment of the district court dismissing the cause of action is correct and is affirmed.

AFFIRMED.