LEO J. DURRETT, APPELLANT, V. BAXTER CHRYSLER-PLYMOUTH, INC., A CORPORATION, ET AL., APPELLEES.

253 N. W. 2d 37

Filed April 27, 1977.  No. 40902.

William H. Mecham, for appellant.

Cline, Williams, Wright, Johnson & Oldfather and Theodore J. Stouffer of Cassem, Tierney, Adams & Gotch, for appellees.

Heard before WHITE. C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

This is an action by plaintiff for breach of warranty that plaintiff's automobile had an "energy absorbing steering column." The petition alleged that the breach of warranty directly and proximately increased the personal injuries and damages sustained by plaintiff as a result of an automobile collision. The action was brought against the manufacturer and the dealer. By stipulation the trial was restricted to the issue of liability, with damages reserved for later determination, if necessary. At the conclusion of plaintiff's evidence the District Court sustained the defendants' motions to dismiss. Plaintiff has appealed.

In December 1967, plaintiff purchased a new 1968 Plymouth automobile from defendant Baxter Chrysler-Plymouth, Inc. The automobile was manufactured by the defendant Chrysler Corporation. Upon purchase the plaintiff received both oral and written warranties that the automobile contained a standard safety feature described as an "energy absorbing steering column."

On May 28, 1970, plaintiff was involved in a collision while operating his automobile on Cuming Street in Omaha, Nebraska. The plaintiff was traveling east at 30 miles per hour when a westbound car crossed the median of the divided highway and collided with his car. The exact angle of the impact was not established, although the greater damage to plaintiff's car was to the left front and side, and the left front wheel was driven back 14 inches. The impact threw the plaintiff forward over the steering wheel, and the steering wheel and column struck his chest and face. The steering wheel was bent down and the steering column was bent up and to the left. As a result of the impact the plaintiff sustained various injuries.

Sometime after the accident the steering column was removed from plaintiff's automobile. The plaintiff, an attorney for one of the defendants, and a mechanic employed by plaintiff, all of whom were present, based on their visual observation of the steering column, testified that it had not collapsed or telescoped, or did not appear to have collapsed or telescoped as a result of the accident. No measurements or tests were made at the time.

Thereafter the steering wheel and column were examined by an engineer for Chrysler Corporation. He testified that the outer mesh section of the steering column had shortened 4/10's of an inch, and that the inner ring of the steering column had telescoped into the outer tube by 1 inch. He also testified that the steering wheel had a permanent deformation of 2½ inches centered around the upper left portion of the wheel. The steering column was designed to absorb both primary and secondary impacts. The lower portion of the column could telescope up to 6 inches to prevent rearward penetration from primary impact and was designed to begin when the front of the car had been pushed back 2 or 3 feet. The upper system, including the steering wheel,

could give about 7 inches in a secondary impact. The steering wheel is designed to absorb up to one-third of the energy generated by a secondary impact, and a mesh jacket and telescoping ring and tube also absorb energy. The steering wheel is designed to give at lower speeds and the mesh jacket does not accordion until higher speeds. The amount of foreshortening in the whole system depends on the severity of the impact. The evidence also established that an impact at a 45 degree angle would produce a maximum of half the force of a direct head-on impact. The only expert testimony was also that the energy absorbing steering column was built in conformity with standards set by the United States government, and that it functioned in this accident in conformity with those standards. The engineer also testified that there were no parts of the steering column that had not been manufactured in conformance with those standards and the standards of the manufacturer. At the conclusion of plaintiff's evidence on the liability issue, the District Court sustained the defendants' motions to dismiss.

Plaintiff's basic contention is that the court erred in dismissing plaintiff's cause of action, and that there was sufficient evidence to go to the jury on the issue of breach of warranty. Plaintiff argues that the evidence that the energy absorbing steering column did not appear to have collapsed or tele-scoped was sufficient evidence that the steering column was defective and not as warranted.

In this case there is no dispute that the defendants expressly as well as impliedly warranted that the steering column in plaintiff's automobile was an energy absorbing steering column. That was the only express or implied warranty involved here. In order to sustain an action on an express or implied warranty the plaintiff must prove, among other things, that the goods did not comply with the warranty, that is, that they were defective, and that his

injury was caused by the defective nature of the goods. See, White & Summers, Uniform Commercial Code, § 9-1, p. 272; § 2-314, Comment 13, U. C. C. Plaintiff contends that the testimony of eyewitnesses that the steering column did not appear to have collapsed or telescoped is sufficient to establish a jury issue as to whether the steering column did or did not comply with the warranty and was or was not defective. The only expert evidence on the issue, however, is flatly to the contrary and is uncontradicted. The reliance on eyewitnesses alone is not fatal when a defect is obvious to a layman, but when standards of performance of the product are not generally known, other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of performance. That evidence may be by evidence as to usages in the trade, the characteristics exhibited by similar goods manufactured by other sellers, or by government standards and regulations in the area. White & Summers, Uniform Commercial Code, § 9-7, p. 294. The only evidence on those issues in this case was that the steering column here was not defective but complied with the warranty, and functioned and performed as it was designed to do. Plaintiff's case rests on the assumption that an energy absorbing steering column must collapse in a collision, regardless of the force of the collision or the angle of the impact. That assumption collapses under the weight of the evidence in this case.

Conjecture, speculation, or mere choice of quantitative possibilities are not proof. In every jury case, at the conclusion of plaintiff's evidence, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is imposed.

Bohling v. Farm Bureau Ins. Co., 191 Neb. 141, 214 N. W. 2d 381.

Plaintiff also contends that the court erred in excluding certain letters and a technical service manual for the car in question. The information contained in the exhibits offered and excluded was, for the most part, already reflected in evidence from the testimony of witnesses called by the plaintiff. While the evidence might have been admissible, under the circumstances it was cumulative and added nothing more to plaintiff's case. Under such circumstances, the error, if any, cannot be said to be prejudicial.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.