RONALD CHRISTENSEN, DOING BUSINESS AS CHRISTENSEN FARMS, APPELLANT, V. EASTERN NEBRASKA EQUIPMENT COMPANY, INC., A NEBRASKA CORPORATION, APPELLEE, V. SNYDER INDUSTRIES, INC., THIRD PARTY DEFENDANT AND THIRD PARTY PLAINTIFF, APPELLEE, V. POLY CAL PLASTICS, INC., THIRD PARTY DEFENDANT, APPELLEE.

261 N. W. 2d 367

Filed January 11, 1978. No. 41248.

Morgan & Morgan, for appellant.

Lauritsen, Baker & Brownell, for appellee Eastern Nebraska Equipment Co., Inc.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellee Snyder Industries, Inc.

Kenneth H. Elson, for appellee Poly Cal Plastics, Inc.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action to recover consequential damages for breach of an implied warranty. The county court of Hall County sustained defendant's motion to dismiss made at the conclusion of plaintiff's evidence on the premise that the plaintiff had not proved the breach of an implied warranty of fitness. The judgment was affirmed on appeal to the District Court. We find plaintiff sufficiently proved the

breach of an implied warranty of merchantability and reverse and remand.

Plaintiff purchased a 5,500-gallon polyethylene tank from defendant Eastern Nebraska Equipment Company, Inc., for the purpose of storing liquid fertilizer. The tank was delivered to plaintiff's farm by Snyder Industries, Inc., who furnished the tank for Eastern. Under the direction of Snyder's driver, it was positioned on several railroad ties placed on the ground by plaintiff and spaced 6 to 8 inches apart. Shortly after delivery the tank was filled with fertilizer. This first load of fertilizer was immediately pumped out and distributed to three smaller tanks for future use in plaintiff's center pivot irrigation system. A few days later a second load of liquid fertilizer was delivered and placed in the storage tank pending future distribution to the three smaller tanks for use through the center pivot distribution system.

Ten days thereafter, while doing some work around the storage tank, Ronald Christensen noticed there had been some seepage. He investigated and found the tank was nearly empty. He immediately called his fertilizer distributor who pumped the remaining fertilizer from the tank and salvaged 3.735 tons out of the 23.75 tons which had been placed in the tank. The storage tank was thereafter replaced and plaintiff instituted this action against the seller to recover the value of the fertilizer lost through the leakage.

Eastern Nebraska Equipment Company, Inc., brought a third-party complaint against Snyder Industries, Inc., who sold the tank to Eastern. Snyder Industries, Inc., brought a third-party complaint against Poly Cal Plastics, Inc., who manufactured the tank in question and sold it to Snyder. These third-party actions were brought pursuant to section 25-331, R. R. S. 1943.

Plaintiff pleaded the fact the tank purchased was

to be used for the storage of liquid fertilizer. The tank was placed in position on his farm by an agent of the seller. It was placed on a lumber base pursuant to Eastern's advice. Christensen did not know how many railroad ties were under the tank. He does know the tank was not dropped when it was placed on the ties.

After discovery of the leak, Christensen called Eastern and talked with a secretary. He then called Snyder Industries and informed them of the situation. They sent representatives out that same day to inspect the tank. The cause of the leak was not apparent from an inspection at the location of the tank. Snyder's representatives suggested the tank be moved near a water supply and filled with water to see if it would be possible to determine where the leak might be. They started running the water in with a garden hose. This was a rather slow process and no leak had been detected by the time it began to get dark. The Snyder representatives suggested that Christensen continue to fill it and they would come back the next day when the tank was full. They returned the next day and the leak was then apparent. There were actually three leaks. The major one was a tear approximately 6 to 8 inches long. Christensen was informed by the Snyder representatives they would replace the tank and pick up the old one. This was done, so the tank thereafter was in the possession of Snyder.

The case was tried by the county court on the theory it was one for breach of an implied warranty of fitness for a particular purpose. This required plaintiff to meet three conditions: (1) The seller must have reason to know the buyer's particular purpose; (2) seller must have reason to believe the buyer is relying on his skill and judgment; and (3) the buyer in fact relies upon the seller's skill or judgment. § 2-315, U. C. C.

The pleadings set out the breach of an implied

warranty of merchantability. At the close of his pleadings, plaintiff did state: "That there was a breach of the Implied Warranty of Fitness of this tank." This was merely his conclusion. He was not pleading the tank was not fit for some particular purpose. As we review the pleadings and the evidence, we conclude plaintiff was using the term "fitness" interchangeably with merchantability. What he was trying to say, and what we believe he said, was the tank was not fit for the ordinary purpose for which it was to be used. This involves an implied warranty of merchantability, and is covered by section 2-314, U. C. C.

Section 2-314, U. C. C., so far as material herein, provides: "(1) * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

"(2) Goods to be merchantable must be at least such as * * *

"(c) are fit for the ordinary purposes for which such goods are used; * * *."

The following from comment 8 of section 2-314, U. C. C., is applicable: "Fitness for the ordinary purposes for which goods of the type are used is a fundamental concept of the present section and is covered in paragraph (c). As stated above, merchantability is also a part of the obligation owing to the purchaser for use."

The seller knew the use for which the tank was purchased. The seller's supplier placed the tank in position on plaintiff's farm. It took several days for liquid to leak from the tank. The source of the leaks could not be found when the tank was first inspected by Snyder's representatives when it was empty. Even when a small quantity of water was put into it, the leaks were not apparent. It was not until the tank was full that the leaks were found. The inference from the testimony that the supporting ties

were discolored indicates the leaks were in portions of the tank which rested on the ties. Plaintiff notified his seller as soon as he discovered liquid had seeped from the tank.

Christensen purchased this tank for the storage of liquid fertilizer. A leaky tank would not be suitable for this purpose. It would not be merchantable under section 2-314, U. C. C. While plaintiff's presentation of the issues herein left something to be desired, the pleadings and the evidence sustain a breach of an implied warranty of merchantability. The motion to dismiss should not have been sustained.

We note plaintiff did not file a motion for a new trial from the judgment of the District Court. The appeal to the District Court was taken pursuant to section 24-541, R. R. S. 1943, which provides for review de novo on the record. In Phillippe v. Barbera, 195 Neb. 727, 240 N. W. 2d 50 (1976), we held: "On appeal to the District Court in civil matters, it is the obligation of the District Court to reach an independent conclusion without reference to the decision of the county court."

Plaintiff should have filed a motion for a new trial to afford the District Court an opportunity to review the question of the sufficiency of the evidence and the other assignments presented in his assignments of error before prosecuting an appeal to this court. In a law action where no motion for a new trial is filed, this court on appeal will examine the record only for the purpose of determining whether or not the judgment is supported by the pleadings. Nebraska Children's Home Soc. v. Collins, 195 Neb. 531, 239 N. W. 2d 258 (1976).

There may be some confusion as to the necessity of filing a motion for a new trial in these situations. To clear up any question, we now hold it is necessary to do so in all cases tried after February 1, 1978. Inasmuch as the issue was not raised by any of the parties herein, we use this case as the one to

call attention to its necessity on and after February 1, 1978.

The judgment is reversed and the cause is remanded to the District Court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

CLINTON, J., concurs in the result.