O'KEEFE ELEVATOR COMPANY, INC., A NEBRASKA
CORPORATION, APPELLANT, V. SECOND AVENUE
PROPERTIES, LTD., A NEBRASKA LIMITED PARTNERSHIP,
ET AL., APPELLEES.
343 N.W.2d 54

Filed January 13, 1984. No. 82-833.

James L. Quinlan of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Kent A. Schroeder of Ross, Schroeder & Fritzler, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

The defendant-appellee Second Avenue Properties, Ltd., refused to pay for a wheelchair lift sold to it and installed by plaintiff-appellant, O'Keefe Elevator Company, Inc. As a consequence, O'Keefe brought this action to foreclose its mechanic's lien. The trial court found in favor of Second Avenue and dismissed O'Keefe's petition. We reverse and remand for entry of a judgment in favor of O'Keefe.

The issues presented by O'Keefe's assignments of error are whether the trial court erred in finding that it breached its implied warranty of merchantability and that it did not substantially perform its contract.

An action to foreclose a mechanic's lien is one grounded in equity and, on appeal to this court, is reviewed de novo on the record, subject to the rule

that where credible evidence is in conflict on material issues of fact, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another, as well as the fact that the trial court viewed the premises. *Burton v. Annett*, 215 Neb. 788, 341 N.W.2d 318 (1983); *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 317 N.W.2d 87 (1982); *Webb v. Lambley*, 181 Neb. 385, 148 N.W.2d 835 (1967).

From such a review of the record we find that Second Avenue entered into a contract with O'Keefe whereby the latter was required to sell to Second Avenue a Cheney wheelchair lift and install it in a back stairway of an office building which Second Avenue was constructing. Prior to entering into its contract with O'Keefe, Second Avenue had obtained the approval of the state public safety advisory committee for the use of such a lift to satisfy certain building requirements.

Second Avenue was advised by both the manufacturer and O'Keefe that the lift required a stairwell landing length of 5 feet 6 inches, not the 4 feet 7 inches provided. Second Avenue was further advised that either a wall would have to be moved or the landing floor level built up 3½ inches. Second Avenue decided to raise the landing floor level. Although Second Avenue undertook that responsibility, it had not raised the landing by the time O'Keefe arrived to install the lift. At that time Second Avenue, rather than building up the entire landing, built instead a 3½-inch platform to fit under the lift. As a consequence, there is a 5¾-inch drop from the lift to the landing. This condition creates more of a slope than an unassisted wheelchair-bound person is able to navigate. Because of this fact, the State Fire Marshal's office has required that "the building be altered to accomodate [sic] the existing lift, so that the lift can stop flush with the floor and the lift can be left in the down position, or another type of lift used." Second Avenue, although it has been using

the lift, refuses to pay any part of the $9,600 contract price to O'Keefe.

We observe that although the contract involved is a mixed one, both for the sale of goods as defined by Neb. U.C.C. § 2-105(2) (Reissue 1980) and for services, the parties tried this case on the theory that the sales article of the Uniform Commercial Code (article 2) applies. That being the case, we make no independent analysis of the issue, and assume for the purposes of this case, without deciding, that the contract does in fact come within the purview of the sales article of the Uniform Commercial Code, which encompasses transactions in goods. Neb. U.C.C. § 2-102 (Reissue 1980). See *Kearney Clinic Bldg. Corp. v. Weaver*, 211 Neb. 499, 319 N.W.2d 95 (1982), stating that this court will dispose of a case on appeal on the theory on which it was presented to the trial court.

The trial court concluded that because the "chairlift . . . cannot be safely operated by a handicapped person in a wheelchair," it is unfit for the ordinary purposes for which such goods are used. It therefore found that O'Keefe breached the implied warranty of merchantability arising by virtue of Neb. U.C.C. § 2-314 (Reissue 1980) and that, consequently, O'Keefe had not substantially performed its contract.

Section 2-314 provides in pertinent part: "(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

"(2) Goods to be merchantable must be at least such as

"(a) pass without objection in the trade under the contract description; and

. . . .

"(c) are fit for the ordinary purposes for which such goods are used."

The difficulty with the trial court's conclusion is

that the failure of the lift to perform adequately results not from something inherent within the lift itself at the time of sale but, rather, because of the inadequacy of the landing which Second Avenue was required to provide. As stated in *Geiger v. Sweeney*, 201 Neb. 175, 266 N.W.2d 895 (1978), to establish a breach of the implied warranty of merchantability, there must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury both proximately and in fact. Thus, a breach of the warranty has been found to exist where the item sold failed to perform adequately because of a lack of quality inherent within the item itself. *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983); *Christensen v. Eastern Nebraska Equipment Co., Inc.*, 199 Neb. 741, 261 N.W.2d 367 (1978). The instant case does not present such a situation.

Second Avenue argues that, in any event, O'Keefe breached its implied warranty of fitness for a particular purpose arising under the language of Neb. U.C.C. § 2-315 (Reissue 1980). That section provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Obviously, the implied warranty of fitness for a particular purpose is different than the implied warranty of merchantability. The following conditions, not required by the implied warranty of merchantability, must be present if a plaintiff is to recover on the implied warranty of fitness for a particular purpose: (1) The seller must have reason to know of the buyer's particular purpose; (2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate

goods; and (3) The buyer must, in fact, rely upon the seller's skill or judgment. *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978); *Ruskamp v. Hog Builders, Inc.*, 192 Neb. 168, 219 N.W.2d 750 (1974); *Larutan Corp. v. Magnolia Homes Manuf. Co.*, 190 Neb. 425, 209 N.W.2d 177 (1973); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 9-9 (2d ed. 1980).

Even if we assume that the first two requirements have been met by Second Avenue, the evidence simply does not establish that it in fact relied upon O'Keefe's skill or judgment in selecting the lift. To the contrary, Second Avenue obtained its own state approval and relied on its own knowledge. It ordered what it wanted and was provided what it ordered. Thus, no implied warranty of fitness for a particular purpose arose.

Neither does the evidence establish that O'Keefe's installation of the lift was faulty in any material respect. The evidence is that the lift itself operates properly; it cannot be used satisfactorily because Second Avenue failed to provide a proper landing.

Therefore, O'Keefe, contrary to the trial court's finding, did substantially perform its contract and is entitled to be paid in accordance with the terms of the contract.

The only question remaining is whether O'Keefe is entitled to the prejudgment interest it asks. Neb. Rev. Stat. § 45-104 (Cum. Supp. 1982), in effect at the time O'Keefe filed its lien, provides in pertinent part: "Unless otherwise agreed, interest shall be allowed . . . on money . . . due and withheld by unreasonable delay of payment." *Walker v. Collins Construction Co.*, 121 Neb. 157, 236 N.W. 334 (1931), permits the recovery of prejudgment interest upon the foreclosure of a mechanic's lien under the authority of § 45-104. However, such interest is recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to either

plaintiff's right to recover or as to the amount of such recovery. *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983); *Classen v. Becton, Dickinson & Co.*, 214 Neb. 543, 334 N.W.2d 644 (1983). Here, there is no controversy as to the amount; it is fixed by contract at $9,600. Neither do we, under the circumstances presented by the record, find any reasonable controversy as to O'Keefe's right to recover. Consequently, O'Keefe is entitled to prejudgment interest.

The cause is remanded to the trial court with directions to enter judgment in favor of O'Keefe against Second Avenue in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.