EILEEN M. TIEDE, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES F. TIEDE, DECEASED, APPELLANT, v. LOUP POWER DISTRICT, A CORPORATION, AND GERALDINE KENNEDY, PERSONAL REPRESENTATIVE OF THE ESTATE OF ARNOLD KENNEDY, DECEASED, APPELLEES.

411 N.W.2d 312

Filed August 21, 1987.   No. 85-735.

296

Thomas J. Young of Young, LaPuzza & Stoehr, for appellant.

Jewell, Gatz & Collins, for appellee Kennedy.

Noyes W. Rogers of Leininger, Grant, Rogers & Maul, for appellee Loup Power Dist.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Plaintiff-appellant, Eileen M. Tiede, personal representative of the estate of her late husband, Charles F. Tiede (hereinafter Tiede), alleges that the negligence of defendant-appellee Loup Power District and that of defendant-appellee Geraldine Kennedy, the personal representative of the estate of her late husband, Arnold Kennedy, caused the 37-year-old Tiede's death when he was electrocuted while helping harvest crops on the Kennedy farm. At the close of plaintiff's evidence, the trial court sustained the defendants' motions to dismiss, and plaintiff appeals. Her six assignments of error fuse into claims that the trial court erred in concluding that (1) neither Loup Power District nor the Kennedy estate was negligent, (2) Tiede was contributorily negligent in a degree sufficient to bar his recovery as a matter of law, and (3) he assumed the risk of injury and was thus precluded from recovery as a matter of law. We affirm.

On November 22, 1981, Tiede, a neighbor of the Kennedys,

was working on the Kennedy farm under an "exchange of work agreement" whereunder Tiede and the Kennedys pooled equipment and helped each other harvest their respective crops.

The owner of the farm, Arnold Kennedy, had died prior to the events in question, and management of the farm passed to his son, John Kennedy, Sr. However, the son had been injured earlier that fall and as a result could not supervise the harvest. Thus, the deceased Kennedy's 16-year-old grandson, John Kennedy, Jr. (hereinafter John Kennedy), was left to take care of the harvest. However, Tiede made many of the decisions because of his superior age and experience.

The point had been reached in the day's work when the westernmost of four grain bins on the site was to be filled with corn through the use of an auger which was 62 feet long and 32.5 feet high when fully raised, but only 15 feet high when completely lowered. The bin reached a height of 25 feet 8 inches and was 22.2 feet in diameter. A 14,400-volt three-wire electrical line ran diagonally from a pole located at a distance of 66.4 feet northwest of the westernmost edge of the bin to a pole 45.8 feet south of the southernmost edge of the bin. Tiede not only knew of the existence of the line, which had been in place since at least 1966, but had warned others about the dangers it posed.

Although Tiede knew that in previous years the subject bin had been loaded from the southeast, he wanted to load it from the west. John Kennedy had told Tiede that one reason the bin had been loaded from the southeast was because of the high-voltage electrical line. Nonetheless, Tiede said that there was room to miss the wires. John Kennedy said it was fine with him if Tiede wanted to try it. Tiede held the safety catch on the auger while it was being raised. James P. Nolan, another neighbor, and William Streeter, Tiede's hired man, lifted the lower end of the auger and began moving it, while raised to its maximum height, in position to load the bin from the west. Nolan and Streeter were pushing the auger, while Tiede was standing next to it, about 15 feet east of them. The auger either came into contact with one of the high-voltage wires or came close enough to the line to create an arc, causing electrical current to flow through the auger into the surrounding soil, thereby killing

Tiede, Nolan, and Streeter. Tiede's body was found directly under one of the support legs of the auger. John Kennedy's cousin, James Kennedy, was also in the area and was shocked unconscious, but survived because he was far enough away from the auger. The contact, or arcing, occurred at a point 24.5 feet southeast of the westernmost pole, where the line, as measured on May 31, 1985, when the temperature was 60 °F, was at an elevation of 20 feet 11 inches.

While the height of the line exceeded the standards set by the National Electric Safety Code, there was evidence from which a jury could conclude that it should have been built over and along a fence line.

It is good to begin our analysis of the applicable law by recalling that in sustaining a motion to dismiss, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986). Moreover, in considering the evidence for the purpose of ruling on such a motion, the party against whom the motion is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can be reasonably drawn from the evidence; if there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *Herman v. Bonanza Bldgs., Inc., supra; Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985).

In ruling on the Kennedy estate's motion, the trial court concluded there was "not sufficient evidence"; that is to say, that the plaintiff failed to establish the estate had been negligent.

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987). It is axiomatic that the burden of proving negligence is on the party alleging it and that merely establishing that an accident happened does not prove negligence. *Himes v. Carter*, 219 Neb. 734, 365 N.W.2d 840 (1985); *Porter v. Black*, 205 Neb. 699, 289 N.W.2d 760 (1980).

The plaintiff must meet the burden of proving that the defendant engaged in some negligent conduct before a defendant is required to prove a defense of contributory negligence or assumption of the risk. See *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987). We thus consider first whether the plaintiff met her burden of proof as to the Kennedy estate.

A duty in negligence cases may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Holden v. Urban, supra*. The duty owed by the owner of premises to his invitees is well established in Nebraska. While the owner of premises owes an invitee the duty to exercise ordinary care to have the premises in a reasonably safe condition for use consonant with the purposes of the invitation, generally there is no duty on the part of an invitor owner to protect the invitee against hazards which are known to the invitee or are so apparent that he or she may reasonably be expected to discover them and avoid injury. *Bruyninga v. Nuss*, 216 Neb. 801, 346 N.W.2d 245 (1984). The duty to warn others of a particular peril is not absolute; the need to warn depends upon, among other things, the age, intelligence, and information of those to whom the warning might be due, and the obligation disappears entirely where it is shown that the injured person did in fact know of and fully appreciate the peril. *Hirschman v. Maddox*, 223 Neb. 302, 389 N.W.2d 297 (1986).

The evidence establishes that Tiede knew about the presence of the lines, was told it was because of the lines that the bin had in the past been loaded from the southeast side, and that, indeed, he had warned others about the lines. Thus, Tiede knew of and fully appreciated the peril. This being so, the landowner was under no duty to warn Tiede of the danger presented by the lines, or had extinguished that duty through adequate prior warnings. *Hirschman v. Maddox, supra*. There being no legal duty, there is no actionable negligence on the part of the landowner. *Holden v. Urban, supra*. The trial court therefore correctly dismissed the claim against the Kennedy estate.

We thus move on to consider the claim against Loup Power District. A power company engaged in the transmission of

electricity is required to exercise reasonable care in the construction and maintenance of its lines. *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984); *Roos v. Consumers Public Power Dist.*, 171 Neb. 563, 106 N.W.2d 871 (1961). The degree of care varies with the circumstances, but it must be commensurate with the dangers involved, and where wires are designed to carry electricity of high voltage, the law imposes the duty to exercise the utmost care and prudence consistent with the practical operation of the power company's business to avoid injury to persons and property. *Suarez v. Omaha P.P. Dist.*, 218 Neb. 4, 352 N.W.2d 157 (1984); *Rodgers v. Chimney Rock P.P. Dist., supra; Lorence v. Omaha P.P. Dist.*, 191 Neb. 68, 214 N.W.2d 238 (1974); *Roos v. Consumers Public Power Dist., supra.* However, power companies are not insurers and are not liable for damages in the absence of negligence. *Suarez v. Omaha P.P. Dist., supra; Rodgers v. Chimney Rock P.P. Dist., supra; Lorence v. Omaha P.P. Dist., supra; Gillotte v. Omaha Public Power Dist.*, 185 Neb. 296, 176 N.W.2d 24 (1970); *Roos v. Consumers Public Power Dist., supra; New Omaha Thomson-Houston Electric Light Co. v. Anderson*, 73 Neb. 84, 102 N.W. 89 (1905).

The principal basis for determining the liability of a power company for injuries resulting from contact between its wires and a movable machine is the foreseeability of a situation arising which might lead to such injuries. *Gillotte v. Omaha Public Power Dist., supra.* Where the circumstances are such that the probability of danger to persons having a right to be near an electrical line is reasonably foreseeable, power companies have often been held liable for injury or death resulting from contact between the powerline and a movable machine. *Gillotte v. Omaha Public Power Dist., supra*; Annot., 69 A.L.R.2d 93 (1960). Power companies must anticipate and guard against events which may reasonably be expected to occur, and the failure to do so is negligence. *Suarez v. Omaha P.P. Dist., supra; Rodgers v. Chimney Rock P.P. Dist., supra; Lorence v. Omaha P.P. Dist., supra; Gillotte v. Omaha Public Power Dist., supra; Roos v. Consumers Public Power Dist., supra.*

The evidence that the line should have been built over and

along a fence line requires us to assume, as we do, that the plaintiff proved Loup Power District was negligent. We must thus determine whether Tiede was contributorily negligent in a degree sufficient to bar his recovery as a matter of law.

One who is capable of understanding and discretion but who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987). Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty imposed upon persons to protect themselves from injury and which, concurring with actionable negligence on the part of the defendant, is a proximate cause of injury. *McMullin Transfer v. State*, 225 Neb. 109, 402 N.W.2d 878 (1987); *Lynn v. Metropolitan Utilities Dist., supra.*

To constitute want of due care on the plaintiff's part, it is not necessary that he or she have anticipated the exact risk which occurred or that the peril was a deadly one; it is sufficient that the plaintiff knew or should have known that substantial injury was likely to result from his or her acts. *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986); *Rodgers v. Chimney Rock P.P. Dist., supra; Lorence v. Omaha P.P. Dist., supra; Disney v. Butler County Rural P.P. Dist.*, 183 Neb. 420, 160 N.W.2d 757 (1968). One who has notice of a dangerous condition of a wire or other electrical appliance and voluntarily or recklessly brings himself or herself into contact with it, as by touching it with conductors of electricity, is guilty of negligence and cannot hold the power company liable for the resulting injuries, and this is true even of an adult who is wholly unskilled in the handling of electricity. *Rodgers v. Chimney Rock P.P. Dist., supra; Disney v. Butler County Rural P.P. Dist., supra.*

In several cases involving contact with high-voltage electrical lines, we have found that the plaintiff's knowledge of the existence of a high-voltage powerline was sufficient to constitute contributory negligence sufficient to bar recovery as a matter of law.

In *Suarez v. Omaha P.P. Dist., supra*, we held that a 12-year-old boy who climbed to the top of a tree where he could almost touch high-voltage electrical wires was contributorily negligent

as a matter of law and thus barred from recovery.

In *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984), the plaintiff's decedent was cleaning a well pit with a 28- to 30-foot metal pipe connected to an air compressor. A high-voltage line ran directly over the well. The plaintiff's decedent knew of the existence of the line and of the dangerous nature of electricity, and had been careful to avoid coming into contact with the line when moving equipment and haystacks. However, the metal pipe came into contact with the powerline, and the plaintiff's decedent was electrocuted. We held that the evidence was sufficient for the trial court to find that the plaintiff's decedent was guilty of contributory negligence which was more than slight and that he had assumed the risk of injury from contact between the metal pipe and the electrical wire.

In *Lorence v. Omaha P.P. Dist.*, 191 Neb. 68, 214 N.W.2d 238 (1974), we reversed the district court's decision in favor of the plaintiff and dismissed the case because the plaintiff was contributorily negligent as a matter of law. Lorence was repairing the lights on an outdoor advertising sign and brought a 20-foot aluminum ladder into contact with a powerline. Lorence had warned a newly hired electrician about the dangers of overhead powerlines. We held that the only inference that could reasonably be drawn from the evidence was that Lorence was contributorily negligent as a matter of law.

The case most factually analogous to the evidence before us is *Disney v. Butler County Rural P.P. Dist., supra.* The plaintiff in *Disney* was pulling 70-foot irrigation sprinkler arms under a two-wire electric power transmission line. Although he knew the equipment was elevated and thus had marginal clearance under the wires, he did not lower the boom to irrigating position before going under the wires. Pulling into the yard with the irrigation trailer system arms elevated and behind him, Disney stopped his tractor without first looking to see how close the arms were to the line. He apparently touched some part of the tractor while jumping off and was shocked unconscious. The evidence showed Disney knew about the lines, that they carried electricity, that it was dangerous to get anything in contact with or close to the lines, and that " 'he was going to get in

trouble' " if he got close to the lines. *Id*. at 422, 160 N.W.2d at 758. We held that the facts were conclusive of contributory negligence on the part of the plaintiff, who was clearly capable of understanding and discretion, at the time of the accident had knowledge of and was conscious of the danger involved, knew of the dangerous condition, and failed to exercise ordinary care to avoid an open and obvious danger.

The facts of this case compel a similar finding of contributory negligence sufficient to bar plaintiff's recovery as a matter of law. Tiede was a participant in the activities designed·to move the auger while in a raised position higher than the electrical line about which he had been warned and about which he had warned others. The high-voltage line presented an open and obvious hazard which Tiede could have avoided by lowering the auger before participating in its move. Accordingly, the trial court was correct in determining that Tiede was contributorily negligent in a degree sufficient to bar his recovery as a matter of law.

The foregoing conclusion makes it unnecessary for us to consider whether Tiede assumed the risk of injury as well.

AFFIRMED.