ROBERT TOPIL ET AL., APPELLANTS, V. HUB HALL COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

430 N.W.2d 306

Filed October 14, 1988. No. 87-108.

Clarence E. Mock, of Johnson and Mock, for appellants.

Jack G. Wolfe, of Wolfe, Anderson & Beverage, for appellee Kearns.

Douglas L. Kluender, of Healey, Wieland, Kluender, Atwood & Jacobs, for appellee Shearer.

Randall L. Goyette and Gail S. Perry, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Hub Hall Co.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The plaintiff Robert Topil was injured on March 8, 1983, when he fell from a false ceiling joist while helping to install heating ducts in a house under construction in Lincoln, Nebraska. At the time of the accident, the plaintiff was a part-time employee of Arctic Air Conditioning & Heating Inc., the heating and cooling subcontractor. Arctic was joined as a plaintiff because of workers' compensation that had been paid to the plaintiff Topil.

The property under construction was owned by the

defendant Hub Hall Company, which was acting as the general contractor. The defendants Larry Shearer and Michael Kearns were the framing subcontractors.

The defendant Hall had notified Arctic that the house was ready for the installation of the heating system.

Topil and another Arctic employee, Tom Staack, were working in the garage area when the accident happened. The garage, which was to be a two-car garage, was below a bedroom. The ductwork had been brought up to the bottom of the bedroom floor joists, which were 2-by-10 lumber, and the plaintiff and Staack were fastening the ductwork to the bedroom floor joists.

A false ceiling was to be constructed in the garage several feet below the bedroom floor joists. A 2-by-6 "ribbon board" had been nailed to the inside of the garage wall studs, and the 2-by-6 false ceiling joists were then toenailed into the ribbon board. The false ceiling joists were supported in the center by a 2-by-6 "nailer" hung from a steel beam which was a part of the support for the bedroom floor. There was no access or "scuttle hole" in the false ceiling, and its joists were intended to support only themselves and the drywall which later would be fastened to them. Kearns estimated the vertical distance between the bedroom floor and the false ceiling joists as "approximately 24 inches or maybe even a little less than that." According to the plaintiff, the vertical distance between the false ceiling joists and the bedroom floor joists was approximately 3 feet, and was sufficient so that he could sit on a false ceiling joist and the bedroom floor joists would be above his head.

According to Kearns, the framing in the garage area was not complete because the framing anchors had not yet been installed on the false ceiling joists. All that remained there was to install the anchors, which were not available at that time, "[c]heck them over and make sure everything was nailed up, you know."

Shearer testified, in a deposition, that he had used a plank across the false ceiling joists to support himself while nailing the cross-bridging between the bedroom floor joists.

At the time of the accident, the plaintiff, who weighed approximately 210 pounds, was sitting on a false ceiling joist.

He was supporting his weight entirely on the joist. Staack was working from a stepladder.

The plaintiff had crawled across approximately eight false ceiling joists before he reached the one which caused him to fall. Some planks to hold tools and supplies had been placed across the false ceiling joists, but were not being used as support for the plaintiff. The accident occurred when the plaintiff crawled onto a false ceiling joist that had only one nail in it to hold it to the ribbon board. The false ceiling joist pulled away from the ribbon board, causing the plaintiff to fall to the dirt floor of the garage and to fracture his ankle.

At the close of the plaintiffs' evidence, the trial court sustained the defendants' motion for a directed verdict and dismissed the action. The plaintiffs have appealed.

"In reviewing a directed verdict the Supreme Court assumes the truth of material and relevant evidence presented by the nonmoving party." *Greening v. School Dist. of Millard*, 223 Neb. 729, 731, 393 N.W.2d 51, 54 (1986). The proper standard for the trial court in considering a directed verdict or motion to dismiss is also well settled in Nebraska law.

> [I]n sustaining a motion to dismiss, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. . . . Moreover, in considering the evidence for the purpose of ruling on such a motion, the party against whom the motion is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can be reasonably drawn from the evidence; if there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law.

(Citations omitted.) *Tiede v. Loup Power Dist.*, 226 Neb. 295, 299, 411 N.W.2d 312, 316 (1987). "For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty." *Id.*

The plaintiffs alleged that the defendant Hall was negligent in failing to provide safety nets, safety belts, and scaffolding;

failing to properly inspect, control, and supervise the work of Shearer and Kearns; representing to the plaintiff that the false ceiling joists were sufficiently secured to allow them to be used for support; and failing to warn the plaintiff of the defectively secured false ceiling joist. Most of these allegations had no support in the evidence. There was no evidence of any duty on the part of Hall to furnish safety nets, safety belts, or scaffolding to the plaintiff. There was no evidence that Hall represented to the plaintiff that the false ceiling joists would support his weight. And there was no evidence of a duty on the part of Hall to warn the plaintiff that one false ceiling joist was defectively secured to the ribbon board.

The plaintiffs argue that Hall, by the exercise of reasonable care, should have discovered the defectively secured false ceiling joist and should have expected that the plaintiff would not discover the danger. The plaintiffs assume that Hall should have anticipated that the plaintiff Topil would use the false ceiling joists to support himself. The evidence is that the joists were not intended for any purpose other than to support the drywall which would be attached to them and, as distinguished from floor joists, were not intended to support heavy loads.

> "Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor . . . ."

*Raile v. Toews*, 165 Neb. 184, 189, 84 N.W.2d 199, 202 (1957); *Rumsey v. Schollman Bros. Co.*, 156 Neb. 251, 55 N.W.2d 668 (1952).

As owner of the premises and general contractor, the defendant Hall owed the plaintiffs a duty of exercising ordinary care to have the premises in a reasonably safe condition for use consonant with the purposes of the invitation. However, "[G]enerally there is no duty on the part of an invitor owner to protect the invitee against hazards which are known to the invitee or are so apparent that he or she may reasonably be expected to discover them and avoid injury." *Tiede, supra* at 300, 411 N.W.2d at 316.

*McKenzie v. Cost Bros., Inc.*, 487 Pa. 303, 409 A.2d 362

(1979), cited by the plaintiffs, is distinguishable on its facts. In the *McKenzie* case, the plaintiff was injured when he stepped on an unstable lintel while laying ceiling/floor planks. The distinction lies in the fact that the lintel was intended to support precast concrete planks which would act as the ceiling of the level below *and the floor* of the next story, and the defendant knew or should have known that the plaintiff would be walking upon the walls, of which the lintel was a part, while laying the precast concrete planks. Unlike the false ceiling joists in this case, which were intended to support only a false ceiling, the lintel in the *McKenzie* case was intended to support the floor of the next story of the building.

There was nothing about the attachment of the false ceiling joists to the ribbon board which was concealed. The butt joint where each false ceiling joist was nailed to the ribbon board was exposed, and its method of attachment was open and obvious to everyone, including the plaintiff.

It would be an intolerable burden to require a general contractor to each day inspect in detail the work of every person working on the job, so that in the event some work was defective a warning could be given immediately to everyone on the job. The general contractor's duty was only to exercise reasonable care. The plaintiffs' evidence in this case failed to show a breach of that duty.

As to the defendants Shearer and Kearns, the plaintiffs alleged that the defendants were negligent in failing to install joist hangers, in failing to properly secure horizontal joist hangers in a workmanlike manner, in failing to inspect, in failing to warn, and in representing that the false ceiling joists were sufficiently secured.

So far as the joist hangers are concerned, the evidence is that they were unavailable and yet to be installed. There is no evidence that Shearer and Kearns represented to Topil that the false ceiling joists were sufficiently secured or that they would support the plaintiff's weight. The fact that the one false ceiling joist was held by only one nail would be evidence of negligence if it could be said that Shearer and Kearns should have anticipated that the plaintiff would use a false ceiling joist to support himself instead of using a ladder, scaffolding, planks across the joists, or other device as support.

The plaintiffs offered no expert testimony to establish the skill and knowledge of framing carpenters, such as the defendants Shearer and Kearns, normally possessed by members of that trade in good standing in similar communities. As we stated in *Doupnik v. Usher Pest Control Co.*, 217 Neb. 1, 346 N.W.2d 699 (1984), their performance must be measured against that which would have been made by members of their trade in good standing in similar communities. One who undertakes to render services in the practice of a trade is required to exercise the skill and knowledge normally possessed by members of that trade in good standing in similar communities. See, also, *Zimmer v. Brandon*, 134 Neb. 311, 278 N.W. 502 (1938).

The record in this case fails to show a breach of any duty owed to the plaintiffs by the defendants. The judgment is, therefore, affirmed.

AFFIRMED.