PETER DELGADO, APPELLANT, V. INRYCO, INC., ET AL., APPELLEES.

433 N.W.2d 179

Filed December 23, 1988.    No. 87-024.

Richard J. Dinsmore, of Dowd, Fahey, Dinsmore & Hasiak, for appellant.

Michael G. Helms, of Schmid, Mooney & Frederick, P.C., for appellee Inryco, Inc.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, Peter Delgado, was injured on July 25, 1979, while employed as an ironworker by Hawkins Construction Company on the Northwestern Bell parking structure project. The plaintiff and another employee, Reuben Rocha, were engaged in "post-tensioning" a concrete floor when, apparently, a hydraulic jack used in the process slipped, resulting in the traumatic amputation of the plaintiff's left thumb and a part of his left ring finger. This action was brought against the defendant Inryco, Inc., to recover damages the plaintiff sustained as a result of the accident and injury.

The defendant Inryco was a subcontractor employed by Hawkins to furnish the materials and equipment necessary to perform the posttensioning, or stressing, of the concrete.

When the concrete floor was poured, steel cables covered with a plastic sheath were imbedded in the concrete. The cables inside the plastic sheath were covered with grease. The cables were permanently anchored at one end of the floor. At the other end the cables extended through a hole in a metal anchor that was cast in the concrete. The cables were stretched or stressed by fastening a hydraulic jack to the free end of the cable and pulling it out through the hole in the anchor. When the proper tension had been achieved, cone-shaped wedges or clips were placed around the cable and into the hole in the anchor. The wedges or clips had teeth which would grip the cable so that it would remain stretched or stressed after the hydraulic jack was removed.

On occasion the wedges or clips would not grip the cable sufficiently to maintain the desired amount of tension. In that event it was necessary to place a device known as a destressing stool between the anchor and hydraulic jack so that when tension was again applied to the cable with the jack, the wedges or clips would be loosened and could be removed from the anchor.

The plaintiff was injured while he and Rocha were attempting to destress a cable so that the clips or wedges could be removed and the cable could be restressed. The destressing stool was a heavy bar of metal with two legs and a horseshoe-shaped notch in the center of the bar to accommodate the cable. The stool was placed against the concrete and the jack then placed against the stool. The jack was used to stretch the cable enough to loosen the wedges or clips, which the plaintiff was to remove using a 16-inch welding rod. Hands were not to be used to remove the wedges because of the amount of pressure which was on the cable. Unlike the anchor, the stool did not have a hole for the nose of the jack to fit into. Paul Steinauer, the construction superintendent for Hawkins, testified that the destressing stool was used a total of about 15 times on the job.

Rocha had instructed Delgado on the use of the equipment. At the time the accident happened the plaintiff had placed the destressing stool against the concrete and the jack had been placed against the stool. The jack had been attached to the cable

and was stretching or stressing the cable. The plaintiff testified that he always stepped away from the jack when it was operating because he knew that it had a tendency to "kick up" in the air and he knew that it was dangerous because of the pressure being applied by the jack.

The plaintiff testified that the accident happened so fast, he only remembered something hitting his hand. He testified that he was not reaching in to remove the clips when the accident happened and that he was about 2 feet away, with his left hand up on the concrete wall. The parties stipulated that the plaintiff's amputated thumb was found in the nose of the jack.

Steinauer inspected the area after the accident and found the jack still attached to the cable and the destressing stool below the scaffolding on which the plaintiff had been working. Steinauer tested the jack and pump and found that they were still working. He did not inspect the clips or the hole in the anchor to see if grout was present. The witness testified that from the appearance of the stool, it looked as if the jack had slipped.

There was no evidence to explain why the jack slipped, if it did, and no evidence that the jack or destressing stool was defective in any way. In short, there was no evidence that the accident was caused by any defect in the equipment supplied by the defendant.

In his petition, the plaintiff alleged three theories of recovery: (1) breach of an express warranty that the stressing machine was fit for the use intended and was merchantable, and breach of implied warranties of merchantability and fitness for a particular use; (2) negligence in supplying a defective stressing machine without proper instruction for its use, failing to warn of the dangerousness of the machine, and failing to check the safety of the machine; and (3) strict liability in tort for supplying a defective stressing machine, failing to warn, and failing to instruct on the proper use of the machine.

The defendant's answer denied the material allegations of plaintiff's petition and alleged several affirmative defenses, including contributory negligence and assumption of risk.

At the close of the plaintiff's evidence, the trial court sustained the defendant Inryco's motion for a directed verdict.

The trial court found that the plaintiff had failed to show any defect in the equipment provided. The plaintiff has appealed.

"In reviewing a directed verdict the Supreme Court assumes the truth of material and relevant evidence presented by the nonmoving party." *Greening v. School Dist. of Millard*, 223 Neb. 729, 731, 393 N.W.2d 51, 54 (1986). In considering a directed verdict or motion to dismiss at trial, this court has held:

> "[I]n sustaining a motion to dismiss, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. . . . Moreover, in considering the evidence for the purpose of ruling on such a motion, the party against whom the motion is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can be reasonably drawn from the evidence; if there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law."

*Topil v. Hub Hall Co., ante* p. 151, 154, 430 N.W.2d 306, 309 (1988), quoting *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987).

The plaintiff contends that the contract between the defendant Inryco and Hawkins established an express warranty. The warranty provision in the contract provided:

> The Seller [Inryco] expressly warrants and guarantees the merchantability, fitness for use and compliance with the specifications or samples of all the goods, wares and merchandise covered by this Agreement and shall make good at its own expense not only any defect that may occur or develop prior to the Contractor's release from responsibility to the Owner therefor, but also any defect that might occur for a period of one (1) year after completion of the work, or for such time as may be specified in the Contract for which the Contractor is required to furnish and perform maintenance. Payment may be withheld pending compliance of this Article.

In order for a plaintiff to recover on a breach of express warranty, he must show, among other things, that "the goods did not comply with the warranty, that is, that they were

defective, and that his injury was caused by the defective nature of the goods." *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 198 Neb. 392, 395-96, 253 N.W.2d 37, 39 (1977). In *Durrett*, the plaintiff alleged that the steering column in his car was defective when it failed to collapse in an accident. Expert testimony indicated that the steering column was built in conformity with U.S. Government standards and that it had functioned according to those standards in the accident. The plaintiff's only testimony concerning the defectiveness of the steering column was the observation that the steering column did not collapse. The plaintiff argued that was sufficient to create a jury issue. This court held:

> The reliance on eyewitnesses alone is not fatal when a defect is obvious to a layman, but when standards of performance of the product are not generally known, other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of performance. That evidence may be by evidence as to usages in the trade, the characteristics exhibited by similar goods manufactured by other sellers, or by government standards and regulations in the area.

*Id.* at 396, 253 N.W.2d at 39-40. See, also, *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973), *disapproved on other grounds National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983); *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983); *Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984).

The plaintiff argues that the fact the stressing equipment sometimes failed to hold the cables at the proper tension was proof that it was defective and the express warranty had been breached. This was the only evidence presented concerning a defect. No expert or engineer in the field of construction testified.

The plaintiff presented no testimony as to the precise cause of the accident. Testimony by the project superintendent showed that a failure to clean out grout around the steel cables could cause the wedges or clips to slip.

The plaintiff's evidence merely showed that the wedges or

clips did not hold every time. There was no testimony as to the stressing equipment's merchantability or quality at the time Inryco delivered the stressing equipment to Hawkins. No expert testimony was presented concerning stressing equipment in general or concerning this stressing equipment specifically.

In order to recover damages for breach of an implied warranty of merchantability, this court has held:

> [T]here must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury both proximately and in fact. Thus, a breach of the warranty has been found to exist where the item sold failed to perform adequately because of a lack of quality inherent within the item itself.

*O'Keefe Elevator v. Second Ave. Properties*, 216 Neb. 170, 174, 343 N.W.2d 54, 56-57 (1984). In proving a deviation from the standard of merchantability, some proof of noncompliance with the warranty must be presented. The plaintiff did not present any such evidence. The plaintiff relied only on the fact that the accident occurred as proof that the stressing equipment was not merchantable.

The purpose of the stressing equipment was to stretch the steel cables. Steinauer testified as to how the equipment was used. The equipment worked on hundreds of occasions without incident. Steinauer testified that prior to the accident, 300 to 350 cables of the same type as the plaintiff had been working on at the time of the accident had been stressed, using the same equipment. After the accident, the construction crew used the same equipment to stress approximately 400 to 500 more cables.

To recover on a theory of breach of warranty, the plaintiff was required to establish a standard of merchantability and prove that it was breached. This the plaintiff failed to do. *Peterson v. North American Plant Breeders, supra.*

In order to recover for breach of an implied warranty of fitness for a particular use, this court has held:

> The following conditions, not required by the implied warranty of merchantability, must be present if a plaintiff is to recover on the implied warranty of fitness for a

particular purpose: (1) The seller must have reason to know of the buyer's particular purpose; (2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) The buyer must, in fact, rely upon the seller's skill or judgment.

*O'Keefe Elevator, supra* at 174-75, 343 N.W.2d at 57.

In order to show a breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove that the product was unfit. There was no evidence that the stressing equipment if properly used was defective or unfit for its purpose.

In *O'Keefe Elevator, supra*, the appellee failed to show that the elevator did not conform to any of the warranties and, therefore, failed on all of its warranty theories of recovery.

With respect to the plaintiff's theory of negligence, the plaintiff alleged that the defendant was negligent in supplying a defective product, in failing to instruct Hawkins properly on its use, in failing to warn the plaintiff of the dangerous characteristics and nature of the stressing machine, and in failing to check the safety of the product periodically. The plaintiff alleged that this negligence was the proximate cause of the plaintiff's injury.

" 'For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty.' " *Topil v. Hub Hall Co., ante* p. 151, 154, 430 N.W.2d 306, 309 (1988), quoting *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987).

There was no evidence presented at trial of a defect in the equipment. It was uncontroverted that the defendant Inryco instructed Hawkins' employees about the use of the stressing equipment and that Rocha instructed the plaintiff on the use of the equipment. There was no evidence of any warning being given to the plaintiff, but the plaintiff recognized the danger of the operation and testified that he realized that he had to stand back from the jack when it was in use because it had a tendency to "kick up." During the destressing operation, the plaintiff

knew that he should not use his fingers to remove the wedges or clips and, in fact, used a 16-inch welding rod. There was no evidence of any duty of the defendant, by contract or in law, to periodically inspect the safety of the stressing equipment.

The plaintiff failed to establish that there was any defect in the equipment supplied by the defendant. Evidence that an accident occurred was insufficient to establish a defect. The evidence did not establish why the accident occurred but, in fact, suggested several possible causes of the accident.

With respect to strict liability, in *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987), we held that to recover on a claim of strict liability in tort for a defectively designed product, a plaintiff must prove by a preponderance of evidence: (1) The product was in a defective condition when it was placed on the market and left the defendant's possession; (2) the defect was the proximate or a proximately contributing cause of plaintiff's injury sustained while the product was being used in the way and for the general purpose for which it was designed and intended; (3) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (4) plaintiff's damages were a direct and proximate result of the alleged defect.

The plaintiff did not allege or prove that the stressing equipment had been defectively manufactured. There was no evidence of a defect, beyond the fact that an accident occurred while using the stressing equipment.

The judgment is affirmed.

AFFIRMED.