E. L. UPTEGROVE, APPELLEE, V. JOHN C. ELSASSER, APPELLANT.

74 N. W. 2d 61

Filed December 23, 1955. No. 33830.

*Heaton & Heaton* and *Martin, Davis & Mattoon,* for appellant.

*Clinton & McNish,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity for an accounting instituted by E. L. Uptegrove as plaintiff against John C. Elsasser, defendant, under the terms of a lease of real estate and an oral contract for the care and keep of a herd of cattle and their increase. The trial court found that defendant should be required to account. An accounting was had and thereafter plaintiff was awarded a judgment against the defendant for $14,844.32 and costs. The defendant appeals.

The record shows that plaintiff was the owner of certain farm and pasture lands and a herd of 180 head of cattle in 1934. During the years 1932 and 1933 defendant was employed by the plaintiff as farm manager in farming the tillable lands and in feeding and caring for the cattle. In 1934 plaintiff leased the lands to the defendant and entered into an oral agreement with him with reference to the cattle on the place. By the oral agreement defendant was to select from the herd 40 cows, 60 calves, and a bull. The balance was to be sold by the defendant and the proceeds delivered to the plaintiff. The base herd thus selected was to be kept intact with stock raised or purchased, and the parties to the agreement were to share the increase equally. Plaintiff was to furnish the pasture and other land upon which to raise feed for the cattle, and defendant was to bear all other expense with reference to the feeding and caring for the cattle. The record shows that defendant selected 81 head of cattle for ship-

ment, 3 of which died. The remaining 78 head were sold and the proceeds delivered to plaintiff. The defendant contends that the herd consisted of 155 head, and that 78 were sold, leaving 77 head in the base herd. Defendant states that prior to his taking over the base herd there were 140 head of cattle and 30 calves, and that 15 head died because of their poor condition, as a result of a lack of sufficient feed and pasture. Defendant also testifies that he lost 34 calves and 7 cows in one blizzard, a fact he does not appear to have reported to the plaintiff. The defendant was to have full charge of the sale, replacement, and purchase of cattle, and was to keep the base herd intact except for losses of livestock from natural causes. The record shows, more or less regularly, the sales of cattle raised until 1946. Plaintiff received checks from the defendant from time to time for his share of the increase, the last one bearing the date of December 31, 1946. Defendant states that the last of the original base herd was sold in 1943, plaintiff providing a bill of sale for this purpose. The record shows purchases of other cattle by the defendant, some of which he claimed as his own. In any event, he continued to pay plaintiff for his share of the increase until December 31, 1946. These payments were accepted by plaintiff and found to be in full settlement of plaintiff's one-half interest in the increase each year. For the years 1946, 1947, and 1948, the evidence of defendant is fragmentary and indefinite concerning the purchase or sale of cattle. He contends that plaintiff's cattle were sold and accounted for, and he states that he owed pasture rent for his own cattle. Plaintiff states that there was never any conversation about pasture rent and that no change had been made in the original oral agreement. Defendant's income tax returns for 1947, 1948, and 1949 show cattle sales in the amounts of $4,677.63, $3,565.50, and $5,400.33, respectively, for cattle raised. Defendant's 1948 income tax return shows a sale of 116 head of cattle purchased and not raised in the amount

of $20,032.05. His 1949 income tax return shows a sale of 88 head of cattle, purchased and not raised, in the amount of $10,189.14.

The defendant contends that he fed and cared for the cattle the year previous to the cattle agreement on the basis that he should have one-half the calf crop for so doing. He testifies that the pasture was inadequate and that he was compelled to purchase feed in the amount of $1,800 for which he was not reimbursed by the plaintiff. Plaintiff testifies that he gave defendant the farm machinery and equipment on the farm in payment of this item, which the defendant accepted. Defendant further alleges that plaintiff gave him the base herd in payment for the feed. The title to the original herd remained in plaintiff until it was sold in 1943. The trial court found against the defendant on this contention, and the evidence clearly supports this finding.

The record further shows that the plaintiff leased certain wheat land to the defendant for an agreed crop rental of one-third of the small grain delivered to market free of all cost to the plaintiff. Plaintiff alleges that in 1950 defendant raised 11,500 bushels of wheat and that he has received 3,463 bushels and 20 pounds thereof and that there is due him 370 bushels and 40 pounds. Plaintiff also alleges that defendant failed to deliver the 1950 crop to market and that plaintiff expended $249.68 to have the wheat delivered. Defendant admits this item as owing to the plaintiff. Plaintiff alleges as a second cause of action that he assigned certain dividends of the value of $473.05 due from the Farmers Union Cooperative Association at Gurley, Nebraska, to the defendant to be used by him in trade. Defendant used $346.67 of such dividends and has failed to account for the balance. Defendant admits using the $346.67 and tendered the balance to the plaintiff by his answer.

Defendant denies that there was any increase from the cattle after January 1, 1947, and denies that plaintiff had any interest in any cattle in the possession of de-

fendant at that time. Defendant alleges that he harvested 350 acres of wheat for the plaintiff in 1934 at a fair and reasonable cost of $1,050, which has not been paid. He testifies, also, that he hauled 6,000 bushels of wheat to market for plaintiff in 1934, the fair and reasonable value of which was $300. He testifies, also, that he hauled 6,000 bushels of wheat for plaintiff in 1935 which was of the fair and reasonable value of $300. He testifies that he hauled grain for plaintiff raised by other tenants at various times for which he was not paid. A failure of proof clearly existed as to the last item mentioned. The evidence of the defendant is that he retained 37 cows, 30 calves, and 1 bull as the base herd and that 7 cows and 34 calves died in the spring of 1935, leaving a base herd of 30 cows and 1 bull. With reference to the 1950 wheat, defendant testifies that plaintiff's share was 3,575.91 bushels, that plaintiff sold 3,475.25 bushels, and that 30 bushels were left in the bin as spoiled wheat. The defendant accounts for the shortage of 70.66 bushels as shrinkage before the wheat was sold.

The trial court found against the defendant on his claim for harvesting wheat for the plaintiff in 1934 and for hauling wheat for the plaintiff in 1934 and 1935. They were not obligations growing out of the oral agreement which was the basis of the accounting suit before us. They were incurred according to the defendant's own testimony before the agreement was made. These claims are no part of or incidental to the oral agreement which is the basis of this accounting action. Such claims were properly disallowed in the accounting.

Upon the foregoing evidence the trial court found that the oral agreement was made as alleged and that the least number of cattle in the herd for which the defendant should account was 30 head, it being the smallest number to which the base herd was reduced by natural causes. The court found that defendant confused and commingled the base herd and the increase therefrom with other cattle claimed by him, all under the same

brand, and that upon termination of the agreement in 1948 defendant sold 116 head for the sum of $20,032.05 and that he should account to plaintiff for 30/116 of said cattle as being the base herd, the value of same being $8,180.70. The court further found that one-half of the balance of the cattle sold in 1948 should be accounted for as increase, the value thereof being $5,-925.67. The trial court also found that plaintiff was entitled to $141.60 for the undelivered portion of his one-third share of the 1950 wheat crop, $249.68 for hauling the 1950 crop of wheat which defendant was obligated to haul, and $346.67 of plaintiff's dividends at the Farmers Union Co-operative Association at Gurley, Nebraska, which were used by the defendant and ordered the reassignment of the unused balance. A judgment was entered for the total of these amounts in the sum of $14,844.32.

We think the evidence sustains the findings of fact made by the trial court. Any and all disputes in the evidence were conflicting and irreconcilable statements, which were made by the two parties to the litigation. The trial court determined them generally in favor of the plaintiff. There was evidence to support the findings made with which this court will not interfere. The applicable rule is that in an equity suit it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. However, if there is an irreconcilable conflict therein on a material issue, this court will, in determining the weight of the evidence of witnesses who appeared in court to testify, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of the facts rather than the other. Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; McCormick v. McCormick, 150 Neb. 192, 33 N. W. 2d 543.

We think the method used by the trial court in fixing the value of the base herd, and the increase to which

plaintiff is entitled, is correct under the evidence in this case. A correct calculation of the amounts reveals, however, that the amount allowed for the base herd should be $5,180.70 and not $8,180.70 as shown by the decree. The amount to be allowed for increase under the method used is $7,425.67 and not $5,925.67 as shown by the decree. The judgment awarded the plaintiff therefore should be $13,344.32 instead of $14,844.32.

The defendant relies primarily on the defenses of laches and the statute of limitations. The present action was commenced on June 16, 1952.

The action was based upon an oral agreement and must be brought within 4 years. § 25-206, R. R. S. 1943. It is the contention of the defendant that the last of the base herd was sold in 1943 and that an action for the return of the base herd was required to be commenced within 4 years from that date. The record in this case shows that the lease of the lands and the cattle agreement were integrated as one transaction. We point out that the evidence shows that the lease of the pasture land and sufficient farm lands to produce necessary feed for the cattle was a part of the contribution the plaintiff made when the cattle agreement was entered into. The agreement contemplated the sale and replacement of the base herd by retaining increase or the purchase of new cattle in order that the base herd would be maintained in substantially the same condition as when defendant received it, except for losses from natural causes. There was no termination of the agreement because of the sale of the last of the original base herd in 1943. Such sale was within the terms of the agreement. No cause of action accrued at that time. The defendant further contends that if the payment to the plaintiff of his share of the increase through the years until December 31, 1946, when the last of such payments was made, had the effect of tolling the statute, the statute of limitations was still a bar to the action because 4 years expired thereafter before the suit was

commenced. It is not contended that any of the cattle, including the base herd, were sold in violation of the agreement. It is not disputed that defendant had a right to sell the base herd and make replacements by purchase, or retaining increase, in order to keep the base herd at a productive age. Consequently, the receipt of a check by plaintiff on December 31, 1946, did not cause an action to accrue. According to the evidence, plaintiff did not discover that there was any disagreement about the base herd until defendant came to his home in 1948 for the purpose of making settlement after the sale of the 116 head of cattle in August of that year. It was at this time, the plaintiff testifies and the trial court found, that plaintiff terminated the agreement and demanded the return of the base herd, or payment therefor. The finding of the trial court that the cause of action accrued at that time is sustained by evidence and will not be disturbed by this court, although it was disputed by the defendant. We conclude therefore that the action accrued in August 1948, or later, and that the commencement of this suit on June 16, 1952, was within the statutory period and not barred by the 4-year limitation period.

The controlling rule is: Where the nature of the contract and the situation of the parties require that it be adjudged that the obligation is a continuing one which is not violated or broken until there is a refusal to honor a demand, the demand creates the liability and the statute of limitations runs from such demand. 54 C. J. S., Limitations of Actions, § 124b, p. 37.

It is the contention of defendant that plaintiff's claim is barred by laches. "Courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute of limitations." Hawley v. Von Lanken, 75 Neb. 597, 106 N. W. 456. "Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some

change in the condition or relations of the property or the parties." Geiss v. Trinity Lutheran Church Congregation, 119 Neb. 745, 230 N. W. 658. This court has held that, where the obligation is clear and its essential character has not been changed by lapse of time, equity will enforce a claim of long standing as readily as one of recent origin, especially between the immediate parties to the litigation. Laches is not a defense in an equity case where there has been no material change in defendant's position. Schurman v. Pegau, 136 Neb. 628, 286 N. W. 921. In applying the doctrine of laches the true inquiry is whether or not the party asserting it has been prejudiced by the delay. Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618.

Defendant's defense of laches is grounded on the contention that plaintiff failed to commence his action in 1943 when the last of the base herd was sold, and again when he received his last check for his share of the increase on December 31, 1946. It is clear that the oral agreement originally entered into was a continuing one that had no termination date. As we have hereinbefore pointed out, there was no violation of the terms of the oral agreement in 1943 or 1946. The agreement was not terminated until 1948 as the trial court properly found from the evidence. We find nothing in the record indicating that there was any change of condition after 1948 upon which the defense of laches could be based. Defendant states in his brief that records and memory have been destroyed by the passage of time and the death and absence of witnesses. There is nothing in the record to sustain this assertion. No witnesses are named who were not available for any reason. The records relevant to the transaction after the original agreement was made, which the defendant admits was made, were kept or should have been kept by the defendant. The record is devoid of any showing that the delay in filing the action after its accrual was such as to prejudice the rights of the defendant. There is nothing to show

that the result would be inequitable or unconscionable any more than in any other case brought within the statutory period. Defendant admitted that he had no disagreement with the plaintiff until 1948. He describes no material evidence that has been lost or what it would show. He points out no change of condition that would entitle him to invoke laches as a defense. The elements of the defense of laches are not established by the record.

Upon a consideration of the record de novo, we find that plaintiff is entitled to an accounting and, after a consideration of the items accounted for in the record, plaintiff is entitled to a judgment for $13,344.32 with interest at 6 percent per annum from the date of this judgment. The costs of this appeal are taxed to the defendant.

AFFIRMED AS MODIFIED.