KEARNEY CLINIC BUILDING CORPORATION, DOING BUSINESS AS KEARNEY CLINIC, APPELLEE AND CROSS-APPELLANT, V. LAWRENCE WEAVER, DOING BUSINESS AS WEAVER CONSTRUCTION COMPANY, AND UNITED STATES FIDELITY AND GUARANTY CO., A MARYLAND CORPORATION, APPELLANTS AND CROSS-APPELLEES.

319 N.W.2d 95

Filed May 7, 1982. No. 44113.

Kenneth F. George of State & Yeagley, for appellants.

William J. Ross of Ross, Schroeder & Fritzler, for appellee.

Heard before BOSLAUGH and WHITE, JJ., and CLARK and KNAPP, D. JJ., and RONIN, D.J., Retired.

CLARK, D.J.

This is an action to recover damages for deficiencies in the construction of an improvement to real property allegedly caused by the failure of the defendant Weaver Construction Company (Weaver) to construct the improvement in accordance with the contract documents. Suit was brought against Weaver and against Weaver's surety, United States Fidelity and Guaranty Company, on their contract performance bond.

Defendants answered by pleading that the action was barred by the statute of limitations, that Weaver performed all work in accordance with the contract documents, and that any problems complained of by plaintiff were solely caused by defects in design and not by any failure to perform on the part of Weaver. The plaintiff's architect was not a party to the action.

The case was tried without a jury on plaintiff's amended petition and defendants' amended answer and counterclaim. The District Court, after trial on the merits, found for the plaintiff and allowed a setoff on defendants' counterclaim. The court also found that plaintiff was entitled to attorney fees on the action against the surety. Defendants appeal from the allowance of attorney fees and plaintiff cross-appeals, claiming the allowance of attorney fees was not in sufficient amount. We reverse and dismiss the petition and the counterclaim.

Plaintiff was the owner and occupant of a building located in Kearney, Nebraska. In October 1973 plaintiff entered into a contract with Weaver for the remodeling of the existing structure and also for the building of a new addition thereto. Construction of the new addition actually commenced sometime in the fall of 1973. The roof of the new addition was started in June or July 1974 and was completed by the end of August 1974.

By January 1975 the plaintiff had completely moved into the new addition and was using it in the operation of its medical clinic. The original building had been occupied by plaintiff during the construction of the new addition, and upon completion of the new addition remodeling of the original building commenced.

Final inspection of the entire project was on April 3, 1975, and a "punch list" was prepared by plaintiff's project manager, setting forth the items to be corrected or finished. The punch list indicated that the project was substantially completed on the date the final inspection was made and that the work undertaken by Weaver was in general conformity with the contract documents.

As early as the fall of 1974, and especially around April of 1975, during the spring thaw and rains, plaintiff experienced serious water leakage problems both from the roof and from part of the foundation. Complaints were made to Weaver regarding these problems.

Various steps were taken by Weaver to attempt to alleviate the leakage problems. In the spring and early summer of 1975, Weaver flooded the roof and sprayed the walls of the "penthouse" which housed mechanical equipment on the roof. The leakage problems, however, continued, as did Weaver's attempts to remedy them.

Plaintiff withheld payment of some $12,764 from Weaver because of the alleged defects in the con-

struction. In January 1976 Weaver demanded final payment. In February 1976 plaintiff paid all of the contract price to Weaver except $2,000. Plaintiff commenced this action on June 20, 1979.

The trial court found that the leakage problems in the foundation area were caused by the contour of the adjoining land and parking areas, and not by the negligence of Weaver. This finding is not disputed by the plaintiff. The trial court further found that the contract was not substantially completed until January of 1976, and therefore the action was commenced within the 4-year statute of limitations. The court also found that the leakage problems in connection with the roof were caused by failure of Weaver to perform the work in a good and workmanlike manner. Judgment was awarded to the plaintiff in the amount of $13,500, with a setoff to the defendants on their counterclaim in the amount of $2,000. The court, in a subsequent hearing, determined that fair and reasonable attorney fees on the surety bond for the plaintiff would be in the amount of $5,000, but that since the action was against both the contractor and the surety, the liability of the surety on attorney fees should be only half of that amount.

Defendants assign as error that the trial court erred in not ruling that plaintiff's cause of action was barred by a 4-year statute of limitations; by ruling that Weaver's work was not in a workmanlike manner, and thus caused damage to plaintiff; and that the court erred in awarding attorney fees to plaintiff. Plaintiff, on its cross-appeal, argues that the trial court, after finding that reasonable attorney fees were in the amount of $5,000, erred in allowing plaintiff only one-half of that amount against defendant surety.

As the trial court correctly determined, the governing statute of limitations is Neb. Rev. Stat. § 25-223 (Reissue 1979), which provides in part:

"Any action to recover damages based on any alleged breach of warranty on improvements to real property or based on any alleged deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property shall be commenced within four years after any alleged act or omission constituting such breach of warranty or deficiency. If such cause of action is not discovered and could not be reasonably discovered within such four-year period, or within one year preceding the expiration of such four-year period, then the cause of action may be commenced within two years from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier."

Under the evidence in this case, it is clear that the only work performed by Weaver after April of 1975, other than testing measures undertaken in an attempt to isolate and remedy the water leakage problems, was of a minor nature and not related to issues in this action. It is equally clear that plaintiff was aware of those leakage problems as early as the fall of 1974, and by April of 1975 was aware that the leakage was considerable and the problem serious.

It is apparent, therefore, that plaintiff, being aware of the problem by April of 1975, had a cause of action against the defendants and could have brought suit at that time. It is not necessary that plaintiff had knowledge of the exact nature or source of the problem, but only knowledge that the problem existed. See *Grand Island School District #2 v. Celotex Corp.,* 203 Neb. 559, 279 N.W.2d 603 (1979). Substantial completion is not the issue under § 25-223, but when the defect was discovered or could reasonably have been discovered. "If there is a breach of warranty as to the quality or manner of construction and there is no attempt to conceal the breach, the statute of limitations will run, not from

the time of actual discovery, but rather from the date of the breach." 13 Am. Jur. 2d *Building, etc. Contracts* § 114 at 107 (1964). A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. See *T. S. McShane Co., Inc. v. Dominion Constr. Co.,* 203 Neb. 318, 278 N.W.2d 596 (1979). The present action was not filed until June 20, 1979, more than 4 years after the plaintiff was fully aware that a problem existed. Plaintiff, having slept on its rights for more than 4 years, is barred by the statute of limitations.

Plaintiff, belatedly, in this court attempts to show that the contract was a continuing one and that the statute did not begin to run until all efforts at remedying the leakage problem had ceased and Weaver had made final demand for payment. In this regard, plaintiff cites *Uptegrove v. Elsasser,* 161 Neb. 527, 74 N.W.2d 61 (1955). Plaintiff's reliance on *Uptegrove* is misplaced. In *Uptegrove* the court found from the evidence that there was a continuing obligation based upon the agreement of the parties. There is no such showing here. Furthermore, the theory of a continuing obligation and reliance thereon by the plaintiff is raised for the first time on appeal. This court will dispose of a case on appeal on the theory on which it was presented in the trial court. *Ward v. Nebraska Electric G. & T. Coop., Inc.,* 195 Neb. 641, 240 N.W.2d 18 (1976).

Under the evidence in this case, the findings of the trial court as to the application of the statute of limitations were clearly wrong. A judgment of the court in a law action where a jury has been waived will be set aside when it is clearly against the weight of the evidence. See *Fisher v. Beebe & Runyan Furniture Co.,* 200 Neb. 349, 263 N.W.2d 826 (1978).

In view of our finding in regard to the statute of limitations, it becomes unnecessary to consider de-

fendants' other assignments of error or the plaintiff's cross-appeal.

The judgment of the District Court is reversed. Petition and counterclaim are dismissed.

REVERSED AND DISMISSED.