GERALD MURPHY AND PAMELA S. MURPHY, APPELLANTS, V.
SPELTS-SCHULTZ LUMBER CO. OF GRAND ISLAND, A CORPORATION,
APPELLEE.

481 N.W.2d 422

Filed March 20, 1992.    No. S-89-721.

John A. Wagoner for appellants.

Robert T. Grimit and Michael A. England, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Gerald Murphy and Pamela S. Murphy, designated herein as "Murphy," appeal from the decision of the district court for Hall County, which granted summary judgment to Spelts-Schultz Lumber Co. of Grand Island, in Murphy's suit for damages on account of negligence and breach of warranties pertaining to roof trusses that failed at Murphy's home. We affirm.

## BACKGROUND FOR SUMMARY JUDGMENT

The factual foundation for the summary judgment in question is supplied by the pleadings, depositions, and affidavits submitted to the district court. See Neb. Rev. Stat. § 25-1330 et seq. (Reissue 1989).

On January 4, 1977, Gerald and Pamela Murphy contracted with Albright Construction for construction of a house in Grand Island. On Murphy's behalf, Albright arranged for Spelts-Schultz Lumber Co. to provide custom design services for the new home. In exchange for the services by the lumber company, Murphy purchased from Spelts-Schultz all the building materials necessary for constructing the house. Pursuant to this arrangement, Spelts-Schultz designed, manufactured, and sold Murphy a number of roof trusses, which were delivered to the construction site on March 9, 1977. Gerald and Pamela Murphy moved into their new home in October 1977.

On July 7, 1978, after a heavy rainstorm, Gerald Murphy noticed that the garage's "drywall [was] starting to crack," and the roof over Murphy's attached garage suddenly sagged and collapsed as he backed his car out of the garage. Subsequent inspection of the damage revealed that metal fasteners on joints of the trusses had apparently pulled away, resulting in failure of the trusses and eventual collapse of the garage roof.

On September 6 and October 25, 1978, Murphy's lawyer wrote two letters to Spelts-Schultz and demanded that the lumber company pay for the damage to the Murphy house; otherwise, suit would be filed. When Spelts-Schultz denied

liability and declined to pay, Murphy sued on May 21, 1981.

Murphy's petition, as amended, asserted two bases for recovery: first, Spelts-Schultz' negligence in the design and construction of the house and inspection of the failed trusses, and, second, breach of an implied warranty that the "trusses were reasonably fit and proper for the use intended" in the Murphy house. In its amended answer, Spelts-Schultz alleged that Murphy's action was "barred by the applicable statute of limitations," but did not specify which statute of limitations applied to any aspect of Murphy's action. Although the matter lay in abeyance for some time, in March 1989 the district court heard the summary judgment motion, and in June 1989 concluded that Murphy's action was barred by the "applicable statute of limitations," without designation of a particular statute of limitations, and, therefore, granted summary judgment to Spelts-Schultz, disposing of Murphy's action for damages.

In this appeal, Murphy contends that the court erred by granting summary judgment for Spelts-Schultz.

## STANDARD OF REVIEW

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citation omitted.]

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988). Accord, *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989); *Wilson v. F & H Constr. Co.*, 229 Neb. 815, 428 N.W.2d 914 (1988); *Wibbels v. Unick*, 229 Neb. 184, 426 N.W.2d 244 (1988).

"On a motion for summary judgment, the question is not

how a factual issue is to be decided, but whether any real issue of material fact exists." *Newman v. Hinky Dinky*, 229 Neb. 382, 385, 427 N.W.2d 50, 53 (1988).

> The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. [Citations omitted.] After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party.

*Wilson v. F & H Constr. Co.*, 229 Neb. at 819, 428 N.W.2d at 917. Accord *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

## ACCRUAL OF CAUSE OF ACTION

" 'A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit, although the nature and extent of damages may not be known.' " *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 246, 440 N.W.2d 664, 666-67 (1989) (quoting from *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984)).

## SUNDRY STATUTES OF LIMITATIONS

In view of the lack of specification at the district court level concerning the statute of limitations which is actually the basis for the summary judgment questioned on appeal, our review necessarily follows a process of elimination to determine whether any statute of limitation invalidates the district court's summary judgment.

The first rule for ascertaining the applicable statute of limitations in this case is: A special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject. See, *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976); *Nebraska Mil-Nic,*

*Inc. v. Hall County*, 188 Neb. 345, 196 N.W.2d 522 (1972); *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964).

*Negligence Actions.*

As a general statute of limitations, Neb. Rev. Stat. § 25-207 (Reissue 1989) requires that an action for negligence be commenced within 4 years after accrual of the cause of action. However, there are special statutes of limitations concerning other causes of action based on negligence; for example, an action based on negligence in professional services

> shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier[,]

Neb. Rev. Stat. § 25-222 (Reissue 1989), and an action based on "deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property shall be commenced within four years after any alleged act or omission," Neb. Rev. Stat. § 25-223 (Reissue 1989).

Also, there is a special statute of limitations pertaining to product liability, namely, Neb. Rev. Stat. § 25-224 (Reissue 1989), which provides in pertinent part:

> (1) All product liability actions, except [those involving exposure to certain chemical compounds], shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

> (2) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2-725, Uniform Commercial Code or [those involving exposure to certain chemical compounds], shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was

first sold or leased for use or consumption.

. . . .

(4) Notwithstanding the provisions of subsections (1) and (2) of this section, any cause of action or claim which any person may have on July 22, 1978, may be brought not later than two years following such date.

As a definitional statute concerning product liability, Neb. Rev. Stat. § 25-21,180 (Reissue 1989) provides:

As used in sections 25-224, 25-702, and 25-21,180 to 25-21,182, unless the context otherwise requires: Product liability action shall mean any action brought against a manufacturer, seller, or lessor of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formulation, installation, preparation, assembly, testing, packaging, or labeling of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or intended use of any product, or the failure to provide proper instructions for the use of any product.

As we construe Murphy's amended petition, the negligence action is, by inference, based on negligence in professional services in custom designing the Murphy house or is based on negligent construction of the Murphy house. Consequently, the general statute of limitations for a negligence action, that is, § 25-207, is superseded by § 25-222 (negligence in professional services) and by § 25-223 (negligent construction of an improvement on real estate).

*Negligence in Professional Services; § 25-222.*

Based on design services apparently rendered by Spelts-Schultz in planning the Murphy house, Murphy's action might be construed as one somehow based on negligence in architectural or engineering services; for example, see, *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988); *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987); and *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985).

A cause of action accrues for negligence in professional services when "the alleged act or omission in rendering or failure to render professional services" takes place. § 25-222. See *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985). The negligent act or omission claimed is Spelts-Schultz' performance in designing the allegedly defective roof trusses. Although the record lacks information to show precisely when the purported design activity occurred, that activity must have taken place sometime between the date of the construction contract, January 4, 1977, and the date when the trusses were delivered at the construction site, March 9, 1977. Therefore, because the roof on Murphy's garage collapsed on July 7, 1978, the negligence cause of action was reasonably discoverable within 2 years of the allegedly negligent design activity discernible when the roof collapsed, disclosing the claimed imperfection or deficiency in the roof trusses. Thus, at the very latest, Murphy's negligence cause of action concerning design of the trusses accrued on March 9, 1979. Consequently, to the extent that Murphy's action is based on negligent performance of professional services in designing the house and garage, Murphy's action was barred by § 25-222 because Murphy did not file suit until May 21, 1981, more than 2 years after collapse of the roof and discovery of the failure in the roof trusses in 1978.

*Negligent Construction; § 25-223.*

This court has held that § 25-223, as a special statute of limitations concerning negligent construction of an improvement on real estate, applies only to actions, whether based on negligence or breach of warranty, brought against contractors and builders. See *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 30, 430 N.W.2d 34, 40 (1988): "§ 25-222 applies to professional services," while "§ 25-223 applies to nonprofessional builders or contractors making improvements to real property, and such interpretation harmonizes the two statutes." See, also, *Smith v. Butler Manuf. Co.*, 230 Neb. 734, 433 N.W.2d 493 (1988); *Board of Regents v. Lueder Constr. Co.*, 230 Neb. 686, 433 N.W.2d 485 (1988); *Williams v. Kingery Constr. Co., supra; Witherspoon v. Sides*

*Constr. Co., supra; Kearney Clinic Bldg. Corp. v. Weaver*, 211 Neb. 499, 319 N.W.2d 95 (1982).

In this case, Spelts-Schultz acted only as the designer and seller of the roof trusses. The contractor for and builder of the Murphy house was Albright Construction, which is not a party to this action. Therefore, § 25-223 has no application to Murphy's action against Spelts-Schultz.

*Product Liability; § 25-224.*

Section 25-224 "begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage." *Condon v. A. H. Robbins Co.*, 217 Neb. 60, 68, 349 N.W.2d 622, 627 (1984).

As previously noted, the roof on the garage for the Murphy house collapsed on July 7, 1978, resulting in damage immediately discernible at that time. Hence, Murphy's cause of action based on product liability accrued on July 7, 1978. This brings us to the provision in § 25-224(4): "[A]ny cause of action or claim which any person may have on July 22, 1978, may be brought not later than two years following such date," that is, not later than July 22, 1980. Murphy did not commence the action until May 21, 1981. Therefore, to the extent that Murphy's action is based on product liability, the action is barred by § 25-224(4). See *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984).

## CONTRACT ACTION

The general statute of limitations applicable to actions on written contracts is Neb. Rev. Stat. § 25-205 (Reissue 1989), which provides in pertinent part: "[A]n action upon . . . any agreement, contract or promise in writing . . . can only be brought within five years."

However, there is a special statute of limitations for an action based on a contract for the sale of goods governed by the Uniform Commercial Code:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may

not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Neb. U.C.C. § 2-725 (Reissue 1980). The "comment" for U.C.C. § 2-725 states, "This article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice."

For U.C.C. § 2-725 to become applicable to Murphy's case, we must first determine whether Murphy's agreement with Spelts-Schultz was a contract for the sale of goods governed by the Uniform Commercial Code.

Although the roof trusses involved in Murphy's case are clearly "goods" as defined by Neb. U.C.C. § 2-105(1) (Reissue 1980), Spelts-Schultz also provided Murphy with services in designing the house. In *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 482, 390 N.W.2d 536, 542 (1986), this court stated:

> [W]hether a transaction involving both a transfer of goods and the performance of labor is the sale of "goods" as contemplated by Neb. U.C.C. § 2-102 (Reissue 1980) (and thus within the purview of the code) or the sale of "services" (and thus not within the purview of the code) depends upon the predominant purpose of the transaction. If that predominant purpose is the rendition of a service with the goods incidentally involved, the transaction is not the sale of goods; if, on the other hand, the predominant purpose is the transfer of goods with labor incidentally involved, the transaction does constitute the sale of goods.

See, also, *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985).

In Murphy's case, the predominant purpose of the contract unquestionably was the purchase and sale of all building

materials for construction of Murphy's new house. Any design services were apparently not separately paid for and, indeed, appear to be merely part of the consideration for Murphy's agreement to purchase all building materials from Spelts-Schultz. Consequently, Murphy's contract with Spelts-Schultz qualifies as a contract for the sale of goods pursuant to article 2 of the Uniform Commercial Code.

In the amended petition's second cause of action, Murphy alleged that Spelts-Schultz impliedly warranted that the "trusses were reasonably fit and proper for the use intended" and that this implied warranty was breached, resulting in damage to Murphy. There are only two implied warranties recognized under article 2 of the Uniform Commercial Code: the warranty of merchantability, under Neb. U.C.C. § 2-314 (Reissue 1980), and the warranty of fitness for a particular purpose, under Neb. U.C.C. § 2-315 (Reissue 1980).

"Merchantability" is defined in U.C.C. § 2-314:

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

In *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. at 314, 363 N.W.2d at 163, this court stated:

To establish a breach of implied warranty of merchantability, there must be proof that there was a deviation from the standard of merchantability at the time of sale and that such deviation caused the plaintiff's injury. See *O'Keefe Elevator v. Second Ave. Properties*, 216 Neb. 170, 343 N.W.2d 54 (1984). In order for the

goods to be merchantable under [U.C.C.] § 2-314, they must be at least such as are fit for the ordinary purposes for which such goods are used. See *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978).

Concerning the implied warranty of fitness for a particular purpose, U.C.C. § 2-315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

To differentiate between the implied warranty of fitness for a particular purpose and the implied warranty of merchantability, the "comment" for U.C.C. § 2-315 suggests:

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Thus, U.C.C. § 2-725 specifies a 4-year statute of limitations and further provides that an action for breach of warranty accrues on tender of delivery, even if the injured party has no knowledge of the breach of warranty. The only exception to this rule is that "where a warranty *explicitly* extends to future performance . . . the cause of action accrues when the breach is or should have been discovered." (Emphasis supplied.) U.C.C. § 2-725(2). "Explicit" is defined as "characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied . . . unreserved and unambiguous in expression: speaking fully and clearly." Webster's Third New International Dictionary, Unabridged 801 (1981). Synonyms for explicit include "unequivocal," "definite," "specific,"

"express," and "categorical." *Id.*

Murphy's suit was filed on May 21, 1981, which is more than 4 years after March 9, 1977, the date on which the goods were delivered. Therefore, Murphy's claim is barred unless the "future performance" exception of U.C.C. § 2-725(2) is available.

However, we conclude that there are two reasons why Murphy's claim does not qualify for the "future performance" exception in U.C.C. § 2-725(2). First, the record contains no evidence that Spelts-Schultz explicitly warranted any future performance of the roof trusses. In the absence of Spelts-Schultz' explicit warranty for "future performance" of the roof trusses, Murphy's cause of action accrued and the 4-year statute of limitations began to run on March 9, 1977. See *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

The second reason that the "future performance" exception is unavailable to Murphy is that the exception applies only to an express warranty and not to an implied warranty. The obvious reason is that once a warranty is expressed, the warranty is no longer implied. See *Allan v. Massey-Ferguson, Inc.*, 221 Neb. 528, 378 N.W.2d 664 (1985) (citing *Grand Island School Dist. #2 v. Celotex Corp., supra*). See, also, *City of Carlisle v. Fetzer*, 381 N.W.2d 627 (Iowa 1986); *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex. 1986); *LR School Dist. v. Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1978); *Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667 (7th Cir. 1981); *Standard Alliance Ind. v. Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978). See, also, 5 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2-725:90 (3d ed. 1984).

In this appeal, Murphy then argues that this case involves an express warranty in view of *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983). An express warranty under article 2 of the U.C.C. is governed by Neb. U.C.C. § 2-313 (Reissue 1980), which provides:

> (1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes

part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

According to Murphy's interpretation of *Puget Sound,* Spelts-Schultz' mere representation that the goods were "roofing trusses" constituted a description of goods and results in an express warranty explicitly extended to future performance under U.C.C. §§ 2-313(1)(b) and 2-725(2).

For existence of an express warranty, a seller must have made a particularized representation constituting a warranty to a buyer. Obviously, without a seller's specific representation, there is no basis for the conclusion that any warranty was expressly made. For example, in *Puget Sound* we concluded that an express warranty existed as the result of the parties' mutual understanding that the laminated siding at issue was expected to last the lifetime of the house to which the siding was applied; therefore, premature delamination of the siding supplied a basis for the buyer's action for breach of an express warranty. See, also, *Hillcrest Country Club v. N.D. Judds Co.,* 236 Neb. 233, 461 N.W.2d 55 (1990) (statements in letter from seller to buyer that roofing material would last 20 years constituted an express warranty under the U.C.C.); *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.,* 219 Neb. 303, 363 N.W.2d 155 (1985) (representations contained in advertising brochure for roofing system designed, manufactured, and supplied by seller constitutes express

warranty under U.C.C. § 2-313); *Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984) (contents of seed company's advertising literature may constitute express warranty under U.C.C.); *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973) (representations of load capacity in manufacturer's pamphlet constituted express warranty binding both manufacturer and lessor of scaffolding), *overruled on other grounds, National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983).

In Murphy's case, neither the record nor the pleadings indicate that Spelts-Schultz ever made an express representation, amounting to a warranty, to Murphy concerning any of the building material eventually incorporated into the Murphy house. Consequently, there was no express warranty concerning the roof trusses, and, without such warranty, there is no basis for a court's concluding that an express warranty explicitly extended to the future performance of the trusses.

For the foregoing reasons, we conclude that any action which Murphy may have had under the Uniform Commercial Code accrued on delivery of the trusses and is barred by the 4-year statute of limitations prescribed in U.C.C. § 2-725.

## CONCLUSION

Since Murphy's causes of action, alleged in the amended petition, are barred by any applicable statute of limitations, the judgment of the district court is affirmed.

AFFIRMED.