BRENDA ALDER ET AL., APPELLANTS, V. FIRST NATIONAL BANK
AND TRUST COMPANY OF KEARNEY AND R.L. ADAM, DEFENDANTS
AND THIRD-PARTY PLAINTIFFS, AND UNITED STATES OF AMERICA,
ON BEHALF OF THE SMALL BUSINESS ADMINISTRATION,
THIRD-PARTY DEFENDANT, APPELLEES.

491 N.W.2d 686

Filed November 6, 1992.    No. S-90-332.

O. William VonSeggern, of Grimminger & VonSeggern, and John B. McDermott, of McDermott, Depue & Zitterkopf, for appellants.

Kenneth F. George, of State, Yeagley & George, for appellee First National Bank.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

In their petition for further review, the plaintiffs-appellants, Brenda Alder, Michael, Robert, and Virginia Humiston, and Stewart and Karen Pascoe, individually and as a partnership, doing business as Kearney Roller Rink, and KAPA, Inc., a corporation, claim the Court of Appeals mistakenly affirmed the district court's grant of summary judgment to the defendants-appellees, First National Bank and Trust Company of Kearney and R.L. Adam. More specifically, the plaintiffs assert, in summary, that the Court of Appeals erroneously (1) failed to find that the defendants breached their obligation to the plaintiffs as third-party beneficiaries to agreements between First National and the third-party defendant-appellee, the United States of America on behalf of the Small Business Administration (SBA) and (2) concluded that there exists no genuine issue of material fact. We affirm.

On or before October 29, 1982, the individual plaintiffs formed a partnership for the purpose of having a roller-skating rink built, which they planned to own and operate. Ultimately, the corporate plaintiff succeeded to the interests of the individual and partnership plaintiffs and assumed the obligations of the individual plaintiffs to First National.

On October 29, the individual plaintiffs applied to First National for a loan, to be guaranteed by the SBA. On November 12, 1982, the SBA issued an "Authorization and Loan Agreement," which approves, under certain terms and conditions, the request that the SBA guarantee 90 percent of the loan to be made by First National to the partnership in the amount of $326,000. The authorization also provides: "Prior to the commencement of any construction, [the partnership]

agrees to . . . [s]ubmit evidence that contractor has furnished a 100 percent performance bond executed by a corporate surety approved by Treasury Department naming [the partnership] only as obligee on American Institute of Architects form or comparable coverage." In addition, the authorization recites that the approval is subject to the provisions of the guaranty agreement executed by First National and the SBA on September 29, 1978. Although there is no dispute that First National did on that date enter into a guaranty agreement with the SBA, First National denies the plaintiffs' assertion that this agreement obligates First National to "close and disburse each loan in accordance with the terms and conditions upon which the loan and guaranty were approved." The 1978 agreement was not made a part of the record.

On November 20, 1982, the individual and partnership plaintiffs executed a promissory note payable to the order of First National in the sum of $326,000. The note obligates the plaintiffs to, among other things, "take all necessary steps to administer, supervise, preserve, and protect the Collateral; and regardless of any action taken by [First National], there shall be no duty upon [First National] in this respect."

On November 22, 1982, the corporate plaintiff, through a predecessor in interest, entered into a $307,000 contract with an unrelated party, whereunder the unrelated party built the rink facilities. This contract obligated the builder to furnish a performance bond, if "required by [First National] and [SBA]." The builder did not furnish a performance bond. The construction proved to be defective, and the plaintiffs claim that as a result, they suffered in excess of $300,000 in damages.

In contending that the defendants are liable to them for that loss, the plaintiffs urge that they are the third-party beneficiaries of the requirement of the 1978 guaranty agreement that First National disburse the proceeds in accordance with the "terms and conditions upon which the loan and guaranty were approved" and the provision of the 1982 loan authorization requiring the plaintiffs to submit evidence that the contractor furnished a performance bond. From that premise, they conclude that the combined effect of the two provisions prohibited First National from disbursing the loan

proceeds in the absence of a performance bond.

It is, of course, true that in considering the plaintiffs' theory we must construe the various instruments involved in the loan transaction together. As reaffirmed in *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992), instruments made in reference to and as part of a transaction are to be considered and construed together. If the instruments are related to and were part of the same transaction, it is not important that they were made or dated at different times. Accord *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983).

With that rule in mind, it is appropriate to recall at this point that summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. *Terry v. Metzger, ante* p. 795, 491 N.W.2d 50 (1992); *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). See, also, *Abboud v. Michals, ante* p. 747, 491 N.W.2d 34 (1992); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). The movant has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that if the evidence presented remains uncontroverted, the movant is entitled to judgment as a matter of law. See, *Murphy v. Spelts-Schultz Lumber Co., supra; Spittler v. Nicola, supra*. After the movant has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing the existence of an issue of material fact which, as a matter of law, prevents the entry of judgment in favor of the movant. See, *Abboud v. Michals, supra; Murphy v. Spelts-Schultz Lumber Co., supra; Spittler v. Nicola, supra*.

Assuming, but not deciding, that all the plaintiffs still have an interest in this matter, it is clear that in the absence of the 1978 agreement, the relevant interrelated documents establish only that the plaintiffs had an obligation to provide First National with evidence that the contractor had furnished a performance bond, but that First National had no duty to see that such was done. Under that state of the record, there can be

no question of material fact, and First National consequently is entitled to judgment as a matter of law.

Indeed, First National would have been entitled to judgment as a matter of law even if the plaintiffs had succeeded in getting the 1978 agreement between First National and the SBA into the record. This is so because there is nothing which establishes that the plaintiffs are third-party beneficiaries of that agreement. In order for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was being made for them. See, *Lauritzen v. Davis, supra*; *Dworak v. Michals*, 211 Neb. 716, 320 N.W.2d 485 (1982). Here, there is no proof of a stipulation in the 1978 agreement that borrowers such as the plaintiffs were to be benefited by the language upon which plaintiffs rely, nor does the language relied upon by the plaintiffs suggest that it was intended to do anything more than protect the interests of the SBA.

The plaintiffs also claim that there can be no summary judgment in favor of Adam because he did not file a motion for such. However, the district court's ruling recites that the "matter came on for hearing on [First National's] and [Adam's] Motions for Summary Judgment." (Emphasis supplied.) The controlling rule is that in appellate proceedings, unless there is proof to the contrary, the journal entry in a duly authenticated record of the trial court imports absolute verity. See, *Murphy v. Murphy*, 237 Neb. 406, 466 N.W.2d 87 (1991); *Wonderling v. Conley*, 182 Neb. 446, 155 N.W.2d 349 (1967). Consequently, inasmuch as there are no allegations upon which Adam could be found personally liable on the contractual relationship plaintiffs claim with First National, there can be no question of material fact as to him, and he, too, is entitled to judgment as a matter of law.

We comment as a final matter that the plaintiffs' combined petition and brief for further review contains factual assertions which are not annotated to the record. An appellate court does not have a duty to search a record for error. See *Coyle v. Janssen*, 212 Neb. 785, 326 N.W.2d 44 (1982). In recognition of

that principle, Neb. Ct. R. of Prac. 2F(3) (rev. 1992) now specifically requires that factual recitations in a brief supporting a petition for review be annotated to the record. Accordingly, it might be well to remember that the lack of such an annotation may lead an appellate court to treat the matter under review as if the represented fact does not exist.

AFFIRMED.